[L.A. No. 32126. Aug. 4, 1986.]

VIRGIL J. BUTLER, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Virgil J. Butler, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Richard J. Zanassi and Arthur L. Margolis for Respondent.

**OPINION**

**THE COURT.**—In this proceeding, we review the recommendation of the Review Department of the State Bar of California that petitioner be suspended from the practice of law in the State of California for a period of two years, that execution be stayed, and that he be placed upon probation for two years upon conditions including sixty days actual suspension.

The recommendation is based on findings of improper conduct in connection with a probate matter in failing to adequately inquire to obtain information to probate the estate, failing to communicate with the person named executor by the will, failing to communicate and cooperate with the latter's attorney, knowingly misrepresenting that the estate was proceeding satisfactorily in probate, and improperly prolonging the estate proceeding. Petitioner claims that he acted properly on the information furnished by his client, that the delay was due to incorrect information furnished by his client, and that we should reject the evidence of a false statement.

Petitioner was admitted to practice in 1942 and previously received a private reproval for failing to take action in a case where he filed a petition for probate and then did nothing for five years.

Petitioner drafted a will for Imogene Cashwheeler in August 1977, and after her death undertook to arrange distribution of her estate. The will provided for some minor personal property gifts, a life estate in trust for her husband of thirty years for his needs, and upon his death $2,000 for each of her five grandchildren, a gift of some stocks and bonds to her son-

in-law, and the rest to her two children of a prior marriage equally. The will named one of the children, William Raymond, executor.

Decedent's husband and Raymond met with petitioner in August 1979 and told him that decedent left a home in joint tenancy with her husband, a savings account held jointly with Raymond, and two credit union accounts held jointly with Raymond and her daughter. Petitioner prepared inheritance tax forms, stating the values of the home and the accounts, and the forms were signed by the husband. He also prepared an affidavit of surviving joint tenant. At that time, petitioner stated that unless there were other assets not in joint tenancy, a probate proceeding might not be necessary.

Petitioner subsequently prepared an affidavit under Probate Code section 630 so that Raymond could cash several medical insurer checks, obtained an appraisal of a diamond ring ($160), and prepared a motor vehicle form for transfer of an automobile worth $200. After resolution of a problem as to the status of the real estate title, petitioner terminated the real estate joint tenancy late in 1980.

Although Raymond and decedent's daughter experienced some difficulty in communicating with petitioner during this period, they ultimately did talk with him on several occasions. At some point petitioner told each of them that the estate was in probate and proceeding satisfactorily. Decedent's husband had suffered a stroke several years earlier, which made it difficult for him to talk, and petitioner did not speak with him after the initial meeting.

In 1981, Raymond called petitioner on several occasions, leaving his phone number with an answering service, but received no return calls. In May he wrote to petitioner, asking him whether he had any time to devote to the case, whether he should secure other counsel, and whether petitioner would call. Receiving no response, he wrote again three weeks later, stating that unless he received a response within 10 days he would pick up all documents relevant to the estate and secure another attorney. Again receiving no response, he wrote a month later asking petitioner to send the will and other relevant documents or to let him pick them up. Again there was no response.

Raymond then retained another attorney, Henry Fox, and Fox wrote three letters to petitioner asking for the will and any other relevant documents, including in the letters an authorization from Raymond. Petitioner remained uncooperative, and Fox brought a proceeding to compel petitioner to produce the will. A day before the scheduled hearing, petitioner delivered the will

to the clerk of the court.[1] Petitioner continued to delay matters in the proceeding to prove the will. The probate estate, which totaled about $40,000, included two of the accounts which petitioner had listed as joint tenancy accounts as well as another bank account, and other property amounting to about $3,000. Decedent's husband died prior to distribution of the estate.

Petitioner testified that he attempted to return Raymond's calls but was unsuccessful. He also said that he was unsuccessful in calling decedent's husband. He said that a few weeks after the third letter from Raymond he wrote a letter to decedent's husband. The letter stated that he considered the husband the client in this matter and that the information he had received indicated there was nothing to probate, and asked whether there was some conflict with Raymond. Petitioner received no answer.

Petitioner did not submit a bill for terminating the real estate joint tenancy and did not receive a fee.

The hearing panel found: Raymond requested petitioner to probate his mother's estate, and petitioner led Raymond to believe that he had been retained and would probate the estate. Petitioner failed to make adequate inquiry to obtain relevant information to probate the estate and failed to communicate adequately with Raymond. Petitioner represented the estate was proceeding satisfactorily in probate and failed to adequately communicate or cooperate with Fox. Because of petitioner's persistent refusal to deliver the will, Fox was required to obtain a court order to produce the will. Petitioner's contention that he was not retained by Raymond but by his stepfather is not relevant because petitioner did not perform the necessary probate work whoever his client was and petitioner led Raymond to believe that he was representing him without ever advising him otherwise. The hearing panel recommended a one-year suspension, that the suspension be stayed, and that petitioner be placed on probation for one year with conditions that he pass the professional responsibility examination and report to a probation monitor. There was no recommendation of actual suspension.

The review department adopted the findings of the hearing panel and added findings that petitioner's representation to Raymond that the estate was proceeding satisfactorily in probate was knowingly false and that petitioner's actions delayed the estate to the extent that decedent's husband

---

[1]Probate Code section 320 provides: "The custodian of a will, within 30 days after being informed that the maker thereof is dead, must deliver the same to the clerk of the superior court having jurisdiction of the estate, or to the executor named therein. Failure to do so makes such person responsible for all damages sustained by anyone injured thereby."

died, defeating his taking as a beneficiary. The review department recommended a two-year suspension stayed upon conditions including actual suspension of sixty days.

■ As often stated, the petitioner in a State Bar proceeding has the burden of showing that the findings of the disciplinary board are not supported by the evidence. (E.g., *Dixon* v. *State Bar* (1985) 39 Cal.3d 335, 340 [216 Cal.Rptr. 432, 702 P.2d 590]; *Gallagher* v. *State Bar* (1981) 28 Cal.3d 832, 837 [171 Cal.Rptr. 325, 622 P.2d 421].) ■ Petitioner claims that decedent's husband and not Raymond was his client, that he could properly rely on the information received from his client, and that based on that information he did all that was required for the disposition of the estate. He claims that the record does not support the findings that he inadequately investigated, that he inadequately communicated and cooperated with Raymond and his attorney, or that his actions delayed the probate of the estate.

■ An attorney must use his best efforts to accomplish with reasonable speed the purpose for which he was employed, and it is settled that failure to communicate with, and inattention to the needs of, a client are grounds for discipline. (*Smith* v. *State Bar* (1985) 38 Cal.3d 525, 539 [213 Cal.Rptr. 236, 698 P.2d 139]; *Wells* v. *State Bar* (1984) 36 Cal.3d 199, 205 [203 Cal.Rptr. 134, 680 P.2d 1093]; *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 127 [202 Cal.Rptr. 349, 680 P.2d 82]; *Spindell* v. *State Bar* (1975) 13 Cal.3d 253, 260 [118 Cal.Rptr. 480, 530 P.2d 168, 80 A.L.R.3d 1231].)

■ Petitioner was employed to settle the estate of decedent. He had drafted the will and was in possession of it. When he was advised that the known assets were held jointly, he must have been aware that, if all of the assets were in fact in joint tenancy, the disposition of assets contemplated by the will would be defeated. Although he checked the title to the realty, he made no effort to check the title to the savings and credit union accounts of which he was informed. Obviously, it would have been a simple matter to ascertain the status of the known accounts. The will specifically referred to American Telephone and Telegraph stock and savings bonds but so far as appears petitioner made no inquiry of decedent's husband or son as to the whereabouts of these assets.

We are satisfied that the finding that petitioner failed to adequately investigate is supported by the record. One of the first duties of an attorney hired to settle an estate is to ascertain the assets of the estate and to determine the procedures required to complete transfer. Minimal inquiry would have disclosed accounts, stocks and bonds in decedent's name alone.

■ While an attorney may often rely upon statements made by the client without further investigation, circumstances known to the attorney may require an investigation. ■ Such circumstances were present here. Petitioner was confronted with information that all assets were in joint tenancy which would preclude any distribution in accordance with the will. In addition, decedent's husband and son had not reported assets specifically mentioned in the will.

Petitioner challenges the findings of failure to adequately communicate with Raymond and Fox and failure to cooperate with the latter on the ground that he had no duty to communicate or cooperate because decedent's husband and not Raymond was his client.[2] However, Raymond was named executor by the will and according to petitioner's understanding a joint tenant in the savings and credit union accounts. To the extent that petitioner was advising that no probate was necessary, he undertook to advise Raymond in his potential capacity of executor, and to the extent petitioner undertook to take care of the claimed joint tenancies he was acting in Raymond's interest since he was believed to be a joint tenant in the accounts.

It should also be pointed out that the claim that decedent's husband was the sole client is a two-edged sword. Under the will the savings and credit union accounts were to be held in trust for the husband's needs, whereas their joint tenancy status would mean that they went to decedent's children immediately and would not be held in trust for decedent's husband's needs. Assuming the husband was the sole client, petitioner had an additional reason to investigate the title to the accounts.

In any event, we must uphold the findings that petitioner led Raymond reasonably to believe he was representing him, that it must have been clear to petitioner that Raymond was led to so believe, and that petitioner did not advise Raymond that he was not a client.

The findings that petitioner failed to adequately communicate with Raymond and Fox and failed to cooperate with Fox also must be upheld. ■ The attorney's duty to communicate with a client includes the duty to communicate to persons who reasonably believe they are clients to the attorney's knowledge at least to the extent of advising them that they are not clients. ■ Moreover, after the August 1979 meeting, petitioner did not communicate directly with decedent's husband but only communicated with Raymond and his sister with respect to the estate. Thus, it is

---

[2]Petitioner testified that decedent's husband first contacted him alone about settling the estate. Raymond testified that he called petitioner and arranged the meeting between him, his stepfather, and petitioner and that his stepfather because of his physical condition would not have gone to petitioner's office without assistance.

apparent that he, at least, treated Raymond as his stepfather's representative. Petitioner's asserted fear that there might be a conflict between Raymond and his stepfather cannot justify his actions because he did not communicate with Raymond to find out what he wanted or attempt to write to the stepfather until after several calls and three letters by Raymond.

The finding that petitioner stated that the estate was in probate and was proceeding satisfactorily is supported by the testimony of Raymond and his sister who each testified that on separate occasions petitioner so stated.

■ While it is ultimately the responsibility of this court to determine the degree of discipline to be imposed, the recommendation of the review department is entitled to great weight. (*People* v. *Smith, supra,* 38 Cal.3d 525, 539.) ■ Although petitioner's other conduct might not warrant significant punishment, his failure to communicate or cooperate with Raymond or his attorney and his delay in turning over the will, in view of the prior discipline, justify the review department's recommendation.

Accordingly, this court orders that petitioner be suspended from the practice of law for a period of two years, that execution of the suspension be stayed and that petitioner be placed on probation for two years, upon the conditions recommended by the review department in its resolution of August 16, 1985, including actual suspension for sixty days and taking and passing the Professional Responsibility Examination within one year from the effective date of this order. This order is effective 30 days after the filing of the opinion.