WALLACH, Circuit Judge,
concurring in the result.
The doctrine of equitable tolling “pauses the running of, or ‘tolls,’ a statute of limitations.” Lozano v. Montoya Alvarez, — U.S. -, 134 S.Ct. 1224, 1231, 188 L.Ed.2d 200 (2014) (citation omitted). “[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.” Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (citation omitted). An attorney’s abandonment of a client may constitute extraordinary circumstances. See Sneed v. Shinseki, 737 F.3d 719, 726-27 (Fed.Cir.2013). The existence of an attorney-client relationship is a condition precedent to a finding of abandonment. See Maples v. Thomas, 565 U.S. 266, 132 S.Ct. 912, 922-23, 181 L.Ed.2d 807 (2012) (explaining that attorney abandonment may arise when an attorney severs an existing relationship with a client).
The majority concludes that the doctrine of equitable tolling is not available to Appellant Marva J. Sneed. Maj. Op. at 1354-55. In reaching its conclusion, the majority does not decide whether the United States Court of Appeals for Veterans Claims (“Veterans Court”) committed a legal error when it found that, under California law, no attorney-client relationship existed between attorney Katrina Eagle and Ms. Sneed and that, consequently, no extraordinary circumstances prevented Ms. Sneed from appealing to the Veterans Court. Id. at 1353.
I write separately because the Veterans Court’s extraordinary circumstances analysis is legally defective. The Veterans Court applied an improperly narrow legal standard in assessing whether an attorney-client relationship existed between Ms. Eagle and Ms. Sneed. Despite that error, I agree with the majority that the court should not provide any relief to Ms. Sneed because she did not diligently pursue her right to appeal to the Veterans Court.
*1356 I.
Ms. Sneed contends that the Veterans Court misapplied California law when it determined that no attorney-client relationship existed between her and Ms. Eagle, which in turn meant that Ms. Sneed could not claim attorney abandonment as a basis for extraordinary circumstances. Ms. Sneed principally raises two arguments: (1) “the Veterans Court relied on an erroneous view of California law[1] regarding attorney-client relationships,” Appellant’s Br. 23 (capitalization modified); and (2) the Veterans Court “erred by substituting California’s legal technicalities for the equitable judgment the tolling inquiry requires,” id. at 30 (capitalization modified). I agree with Ms. Sneed’s first argument.
The Veterans Court articulated an incomplete and, thus, improperly narrow legal standard for determining when an attorney-client relationship exists under California law. It correctly found that (1) a contract is required to establish an attorney-client relationship and (2) a contract can be express or implied-in-fact. Sneed v. McDonald (Sneed III), No. 11-2715, 2014 WL 5365571, at *4 (Vet.App. Oct. 22, 2014) (citing Responsible Citizens v. Superior Court, 16 Cal.App.4th 1717, 20 Cal.Rptr.2d 756, 766 (1993)). Although the Veterans Court recognized an implied-in-fact contract could be created by the parties’ conduct, id., it failed to consider that an attorney’s provision of legal advice may constitute the required conduct.
Over a century ago, the Supreme Court of California provided a broad standard for determining when an implied-in-fact contract may arise between an attorney and a client. It stated that “[w]hen a party seeking legal advice[2] consults an attorney at law, and secures that advice, the relation of attorney and client is established prima facie.” Perkins v. W. Coast Lumber Co., 129 Cal. 427, 62 P. 57, 58 (1900). In the decades that followed, the Supreme Court of California and the California Courts of Appeal have cited this passage favorably and expanded upon it in deciding whether an implied-in-fact contract gave rise to an attorney-client relationship. See, e.g., People ex rel. Dep’t of Corps. v. SpeeDee Oil Change Sys., Inc., 20 Cal.4th 1135, 86 Cal.Rptr.2d 816, 980 P.2d 371, 379-80 (1999); Beery v. State Bar of Cal., 43 Cal.3d 802, 239 Cal.Rptr. 121, 739 P.2d 1289, 1293 (1987); Benninghoff v. Superior Court, 136 Cal.App.4th 61, 38 Cal.Rptr.3d 759, 766 (2006); Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, 79 Cal.App.4th 114, 93 Cal.Rptr.2d 534, 542 (2000); Miller v. Metzinger, 91 Cal.App.3d 31, 154 Cal.Rptr. 22, 39 (1979).
SpeeDee is particularly instructive in assessing when legal advice is sufficient to establish an attorney-client relationship under Perkins. SpeeDee concerned “whether an attorney-client relationship ha[d] reached a point where the attorney can be subject to disqualification for a *1357 conflict of interest.”[3] 86 Cal.Rptr.2d 816, 980 P.2d at 379. In that decision, the California Supreme Court held that an attorney-client relationship may arise from a preliminary consultation by a prospective client who seeks, and receives, legal advice, even though no formal agreement for representation results.[4] See id. 86 Cal.Rptr.2d 816, 980 P.2d at 379-80.
The Veterans Court committed error because it did not consider whether the August 2, 2011 letter[5] from Ms. Eagle to Ms. Sneed constituted legal advice sufficient to establish an implied-in-fact attorney-client contract under Perkins and its progeny. Indeed, the Veterans Court did not discuss Perkins or SpeeDee in its analysis, see Sneed III, 2014 WL 5365571, at *3-7, despite Ms. Sneed’s argument that her communications with Ms. Eagle resulted in an attorney-client relationship, see J.A. 80 (Appellant’s Memorandum of Law in Response to the Veterans Court’s Order of Mar. 31, 2014, where she quoted Beery for the proposition that, when “a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established prima facie” (quoting 239 CaLRptr, 121, 739 P.2d at 1293)).[6] Thus, because the Veterans Court did not even consider whether the contents of the letter in question amounted to legal advice sufficient to establish an attorney-client relationship,[7] it applied an improperly narrow legal standard in its analysis.
II.
Despite the improperly narrow legal standard applied by the Veterans Court, I agree with the majority that we cannot assess the merits of Ms. Sneed’s claim for compensation because Ms. Sneed did not diligently pursue her right to appeal to the Veterans Court. Maj. Op. at 1354-55. Nevertheless, as the majority recognizes, *1358 Ms. Sneed may have another remedy at her disposal. See id. at 1351-52 (citing Maples, 132 S.Ct. at 922) (explaining that, under general principles of agency law, attorney malfeasance may give rise to a malpractice remedy).

. "Both Ms. Sneed and Ms. Eagle reside in California, and the parties here agree that California law controls on the issue of whether an attorney-client relationship existed.” Maj. Op, at 1352.

. Neither the legislature nor the courts of California have expressly defined what constitutes "legal advice.” However, the California State Bar Committee on Professional Responsibility and Conduct has stated that legal advice includes “that which requires the exercise of legal judgment beyond the knowledge and capacity of the lay person,” such as when an attorney "mak[es] a recommendation about a specific course of action to follow." Cal, State Bar Comm, on Prof'l Responsibility & Conduct, Formal Op. 2003-164, 2003 WL 23146203, at *4 (2003) (internal quotation marks, brackets, citation, and footnote omitted).

. Although SpeeDee did not address the existence of an attorney-client relationship for purposes of attorney abandonment, California courts have considered the factors articulated in Perkins and its progeny in a number of contexts. See, e.g., Streit v. Covington & Crowe, 82 Cal.App.4th 441, 98 Cal.Rptr.2d 193, 196 (2000) (discussing Miller in the context of legal malpractice). Indeed, the Veterans Court relied upon Responsible Citizens in its analysis, which concerned attorney disqualification for a conflict of interest. See 20 Cal.Rptr.2d at 761.

. This conclusion is sensible in light of an attorney's duty under California law to advise individuals who reasonably believe they are clients that they are, in fact, not clients. See Butler v. State Bar of Cal., 42 Cal.3d 323, 228 Cal.Rptr. 499, 721 P.2d 585, 589 (1986).

. As the majority observes, in that letter
Ms. Eagle provided an assessment of Ms. Sneed’s service connection claim, explaining her view that the claim “does not meet the criteria under 38 C.F.R. § 3.312," and concluded, "I do not believe the VA erred in denying your claim; thus, I will not be able to represent you for any subsequent appeal for entitlement to service connection for the cause of death, and for [dependency and indemnity compensation] benefits.”
Maj. Op. at 1349-50 (footnote omitted) (quoting J.A. 53).

. The passage from Ms. Sneed’s Memorandum raises doubt as to whether the Veterans Court’s properly concluded that Ms. Sneed "d[id] not assert that Ms. Eagle provided any advice to” her. Sneed III, 2014 WL 5365571, at *6.

. To be sure, if the letter from Ms. Eagle stated only that she would not represent Ms. Sneed, there would be no dispute that an attorney-client relationship had not formed between them. However, in addition to declining to represent Ms. Sneed, the letter also contains legal analysis and advice. J.A. 53-54. The additional content suggests that Ms. Sneed sought legal advice from Ms. Eagle and secured it, even though Ms. Eagle ultimately declined to represent her. The additional content thus warrants an analysis under Perkins.