[No. F018604. Fifth Dist. July 1, 1993.]

RESPONSIBLE CITIZENS et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
DAVID ASKINS et al., Real Parties in Interest.

**COUNSEL**

Harriman & Gabrielli, John C. Gabrielli and Richard L. Harriman for Petitioners.

No appearance for Respondent.

Phillip S. Cronin, County Counsel, Philip M. Jay, Deputy County Counsel, and J. Steven Lempel for Real Parties in Interest.

OPINION

**THAXTER, J.**—We hold here that an attorney representing a partnership does not necessarily have an attorney-client relationship with an individual partner for purposes of applying the conflict of interest rules. Whether such a relationship exists turns on finding an agreement, express or implied, that the attorney also represents the partner.

Respondent Superior Court of Fresno County disqualified Harriman & Gabrielli (H & G) from representing petitioners Responsible Citizens, a California nonprofit public benefit association, and Radley Reep (Citizens) in a proceeding in that court against the County of Fresno, the Fresno County Board of Supervisors (County), and real parties in interest David Askins and Karen Askins (jointly, Askins). When H & G filed the underlying proceeding on behalf of Citizens, it also represented, in entirely unrelated matters, a general partnership in which Karen Askins was a member.

Citizens seeks a writ of mandate directing respondent court to vacate the disqualification order. We conclude that because the order was based on the court's legal conclusion that representation of a partnership automatically creates an attorney-client relationship with the individual partners, the writ should issue directing the court to reconsider the matter and determine if an agreement to represent Karen Askins should be implied from the circumstances surrounding H & G's representation of the partnership.

### FACTS AND PROCEDURAL HISTORY

In 1989, H & G began representing Citizens in their efforts to oppose a sand and gravel surface mining project. By October 1991, H & G learned that Citizens planned to oppose another such project operated by David Askins, pursuant to a conditional use permit approved by County (CUP 2488).

Also in October 1991, Richard Harriman of H & G was contacted by Karen Askins, who had been referred to him by a Chowchilla broker, regarding a real estate matter unrelated to the CUP 2488 matter. Askins sought legal services on behalf of Westside Land Office (Westside). Harriman claims Karen Askins told him she was "with" Westside and that he "already knew, mostly from listening to radio ads, that a woman named Donna Pride was [Westside's] licensed broker." He assumed Karen Askins was an employee of Westside, although he does not deny that she may have referred to Westside as "my business."

In contrast, Karen Askins specifically avers that she told Harriman, during the course of their business relationship, that Westside was her business and

that she was one of the owners. In fact, Westside was a general partnership composed of Karen Askins and Myrtice Wilson. Donna Pride was the firm's licensed broker responsible for supervising the professional activities of its unlicensed personnel, but she did not have an ownership interest.

According to Harriman, when he was first contacted by Karen Askins he asked whether she was related to David Askins, and she replied that David was her husband. Harriman "felt uneasy about providing legal representation to her because of the potential conflict of interest" and explained to Karen Askins that H & G was representing Citizens in opposing CUP 2488.

Harriman states that he "requested a waiver of the potential conflict before providing legal representation," but Karen Askins "assured [him] there was no basis for a conflict of interest" because her husband's business "was completely separate from her own activities with" Westside. Based on this information, Harriman agreed to represent Westside.

Karen Askins concedes that she had a conversation with Harriman concerning his firm's representation of Citizens, but according to her, Harriman stated any legal action regarding CUP 2488 would be taken against the County and never advised her that she and her husband would be named as real parties in interest in any litigation filed by Citizens concerning the CUP 2488 matter, or that Citizens would seek attorney fees, costs, or other judicial relief from her and her husband. She further states that Harriman did not advise her to seek independent counsel, he did not give her any written explanation of his firm's representation of Citizens and any potential consequences it might have to her and her husband, and he did not request or obtain a written consent from her regarding any possible dual representation. Harriman does not contradict these allegations.

During November and December 1991, H & G provided legal service to Westside regarding a disclosure, waiver, and hold harmless agreement in a pending real estate escrow. Westside apparently was the real estate agent for one or both of the parties to the escrow. H & G billed Westside $105, plus out-of-pocket costs, for its services. The bill was paid by a Westside check signed by Karen Askins and Myrtice Wilson on December 11, 1991. In May 1992 Karen Askins and Harriman had at least one telephone conversation regarding another real estate matter in which Westside was involved, and on June 3 and June 5, 1992, Harriman received two fax transmissions from Karen Askins on Westside's letterhead. No further services were rendered. None of the matters as to which Karen Askins consulted H & G on behalf of Westside was in any way related to the CUP 2488 matter.

On April 29, 1992, Citizens, represented by H & G, filed the underlying litigation, a petition for writ of mandate and complaint for injunctive relief.

The pleading names County as respondents and defendants, and Askins as real parties in interest. In addition to a writ of mandate, the pleading sought injunctive relief to prohibit "respondents and real parties in interest from carrying out the project [CUP 2488] until all applicable laws have been complied with; and an award of attorney's fees under [Code of Civil Procedure] Sec. 1021.5, and Section 800 of the Government Code."

On or about June 29, 1992, Askins filed a motion to disqualify H & G from representing Citizens in the underlying litigation. Citizens opposed the motion. Declarations in support and opposition were submitted by Karen Askins and Harriman. On August 14, 1992, the superior court granted the motion and issued an order disqualifying H & G. Citizens then moved for reconsideration and for relief under Code of Civil Procedure section 473. After hearing, that motion was denied by order signed on September 28, 1992.

Citizens sought relief from this court on October 13, 1992. As directed by us, Askins filed a response and opposition briefing, and on January 19, 1993, we issued an order to show cause. Askins submitted supplemental opposition briefing, and County joined in Askins's briefing.

## DISCUSSION

At the outset we should stress what this case does *not* involve. There is no claim that H & G obtained any confidential information, in its representation of Westside, which is material to the CUP 2488 matter. Neither is there any claim that H & G ever rendered any service to Karen Askins regarding the CUP 2488 matter or any other matter involving her personal, as opposed to partnership, interests.

The disqualification order rests solely on the lower court's determination that an attorney-client relationship existed between H & G and Karen Askins. The issue presented is whether Karen Askins, by reason of H & G's representation of Westside, was a "client" of H & G when H & G concurrently represented Citizens. If the answer to this inquiry is affirmative, H & G was properly disqualified.

### I. *Disqualification of Counsel—General Considerations*

Courts have authority to order disqualification of counsel pursuant to Code of Civil Procedure section 128, subdivision (a)(5). (*Higdon* v. *Superior Court* (1991) 227 Cal.App.3d 1667, 1671 [278 Cal.Rptr. 588].) The power is frequently exercised on a showing that disqualification is required under

professional standards governing avoidance of conflicts of interest or potential adverse use of confidential information. (See, e.g., *Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050 [8 Cal.Rptr.2d 228]; *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572 [283 Cal.Rptr. 732].) Violation of a disciplinary rule may justify disqualification. (*Higdon v. Superior Court, supra,* 227 Cal.App.3d at p. 1672; cf. *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 303 [254 Cal.Rptr. 853] [suggesting disqualification is not *necessarily* warranted for violation of a specific disciplinary rule].)

A per se or automatic disqualification rule applies when counsel's representation of one client is adverse to the interests of another *current* client. (*Truck Ins. Exchange v. Fireman's Fund, supra,* 6 Cal.App.4th at pp. 1056-1060.) When the current representation is adverse to the interests of a *former* client, though, disqualification may be necessary only if the attorney, by reason of the former representation, obtained confidential information material to the current representation. If there is a "substantial relationship" between the two representations, courts presume that confidences which may have value in the current representation were disclosed in the first representation. (*Ibid.;* see also *H. F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445 [280 Cal.Rptr. 614]; *Western Continental Operating Co. v. Natural Gas Corp.* (1989) 212 Cal.App.3d 752 [261 Cal.Rptr. 100].)

The Rules of Professional Conduct of the State Bar of California,[1] approved by the Supreme Court pursuant to Business and Professions Code sections 6076 and 6077, reflect the distinction between conflicts involving two or more current clients and those involving a former client. During the time period relevant to this case, rule 3-310 provided, in pertinent part:

"(B) A member [of the State Bar] shall not concurrently represent clients whose interests conflict, except with their informed written consent.

"
. . . . . . . . . . . . . . . . . . . . . . . . . . .

"(D) A member shall not accept employment adverse to a client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the

---

[1]All further references to a rule or rules are to the Rules of Professional Conduct of the State Bar of California.

employment except with the informed written consent of the client or former client."[2]

The widespread use of motions to disqualify opposing counsel is apparently a fairly recent phenomenon[3] and has been referred to by one commentator as an "epidemic." (See Comment, *Federal Courts and Attorney Disqualification Motions: A Realistic Approach to Conflicts of Interest* (1987) 62 Wash.L.Rev. 863, 874.)

■ Courts have frequently noted that disqualification motions may require a balancing of competing policy considerations.

". . . On the one hand, a court must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court. [Citations.] On the other hand, it must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement. . . ." (*Gregori* v. *Bank of America, supra,* 207 Cal.App.3d at p. 300; see also *Rosenfeld Construction Co.* v. *Superior Court* (1991) 235 Cal.App.3d 566, 578 [286 Cal.Rptr. 609]; *Elliott* v. *McFarland Unified School Dist.* (1985) 165 Cal.App.3d 562, 572-573 [211 Cal.Rptr. 802].)

Courts have also expressed concern that the disqualification procedure may be abused if it is invoked solely to gain some tactical or strategic litigation advantage. (See, e.g., *Gregori* v. *Bank of America, supra,* 207 Cal.App.3d at pp. 300-301; *In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 586; *H. F. Ahmanson & Co.* v. *Salomon Brothers, Inc., supra,* 229 Cal.App.3d at p. 1455.)

---

[2]Effective August 12, 1992, rule 3-310 was amended. The subject formerly covered by paragraph (B) is now covered in paragraph (C), which reads:

"(C) A member shall not, without the informed written consent of each client:

"(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

"(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

"(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter."

The subject formerly covered in paragraph (D) now appears, without substantial change, in paragraph (E).

[3]The annotations to rule 3-310, dealing with the representation of adverse interests, now fill over eight pages. (See 23 West's Cal. Codes Ann. Rules, pt. 2 (1981 ed., 1993 supp.) pp. 633-641.) Nearly all the annotations are of decisions involving motions for disqualification rendered within the last 10 years.

II. *Attorney Representing a Partnership May, But Does Not Necessarily, Represent Individual Partners*

A. *Case Law.*

 Neither we nor the parties have located any decision clearly addressing the question of whether, within the conflict of interest context, an attorney representing a partnership necessarily has an attorney-client relationship with the individual partners extending beyond the partnership affairs.

Citizens claims that a decision of this court, *Woods v. Superior Court* (1983) 149 Cal.App.3d 931 [197 Cal.Rptr. 185], supports the lower court's ruling. *Woods* arose from a marital dissolution proceeding in which wife moved to disqualify husband's attorney. The attorney also represented a closely held corporation owned by wife and husband. Wife had moved to join the corporation as a party. This court affirmed the lower court's granting of the disqualification motion: "We conclude that, absent consent or waiver, the attorney of a family-owned business, corporate or otherwise, should not represent one owner against the other in a dissolution action." (*Id.* at p. 937.)

*Woods* is so factually distinguishable from this case it offers little guidance here. *Woods* involved a controversy between the two owners of a closely held business, which was referred to as the "focus" of the marital dissolution. (*Woods, supra,* 149 Cal.App.3d at p. 936.) Here the controversy is between one owner of the business and a third party, and the business itself is completely uninvolved in the controversy and the action.

In *Woods* this court expressly distinguished *Meehan v. Hopps* (1956) 144 Cal.App.2d 284 [301 P.2d 10], the seminal case in the corporate attorney area. (149 Cal.App.3d at p. 936, fn. 4.) In *Meehan*, the receiver of a corporation sued Hopps, a former director, member of the executive committee and chairman of the board, for alleged violations of his fiduciary duties. Hopps sought to bar the receiver from employing a law firm which had once performed legal services for the corporation at Hopps' request. The trial court denied the motion to disqualify the law firm, and the First Appellate District affirmed, finding "nothing in the record to show any relationship of attorney and client between Hopps and counsel, . . ." (*Meehan, supra,* 144 Cal.App.2d at p. 290.)

 "The attorney for a corporation represents it, its stockholders and its officers in their representative capacity. He in nowise represents the officers

personally. It would be a sorry state of affairs if when a controversy arises between an attorney's corporate client and one of its officers he could not use on behalf of his client information which that officer was required by reason of his position with the corporation to give to the attorney." (*Ibid.*)

*Meehan* has been generally followed (see, e.g., *Skarbrevik* v. *Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692, 703 [28 Cal.Rptr. 627]; *Ward* v. *Superior Court* (1977) 70 Cal.App.3d 23, 33-34 [138 Cal.Rptr. 532]; *Lewis* v. *LeBaron* (1967) 254 Cal.App.2d 270, 281 [61 Cal.Rptr. 903]).

Askins also cites some federal decisions holding that, with respect to attorney-client privileged communications, an attorney for an unincorporated association is considered to represent the association's individual members. (*Schwartz* v. *Broadcast Music* (S.D.N.Y. 1954) 16 F.R.D. 31; *Philadelphia Hous. Auth.* v. *American Radiator & S. San Corp.* (E.D.Pa. 1969) 294 F.Supp. 1148.) To the same effect, but not cited, is *Wortham & Van Liew* v. *Superior Court* (1987) 188 Cal.App.3d 927 [233 Cal.Rptr. 725], in which the court posed the question: "May the attorney for a partnership withhold from a partner important information received from another partner concerning partnership transactions claiming the information is confidential under the attorney-client privilege?" (*Id.* at p. 929.) In ruling that the attorney had no right to withhold such information, the Fourth District observed:

██ "In the context of the representation of a partnership, the attorney for the partnership represents all the partners as to matters of partnership business. . . .

" '. . . [L]egal counsel provided to the partnership is intended to and does assist each and every general partner to fulfill his joint management duties.' [Citation.]" (*Wortham & Van Liew* v. *Superior Court, supra,* 188 Cal.App.3d at pp. 932-933; see also *Lasky, Haas, Cohler & Munter* v. *Superior Court* (1985) 172 Cal.App.3d 264, 284 [218 Cal.Rptr. 205]; *Hecht* v. *Superior Court* (1987) 192 Cal.App.3d 560, 566-567 [237 Cal.Rptr. 528]; *Roberts* v. *Heim* (N.D.Cal. 1988) 123 F.R.D. 614; *Pucci* v. *Santi* (N.D.Ill. 1989) 711 F.Supp. 916.)

██ Because the quoted language limits the attorney's representation of individual partners "to matters of partnership business" and to assisting the partner in fulfilling "his joint management duties," it does not support the disqualification order here. The CUP 2488 matter is not related to Westside business, and there is no conflict between Karen Askins's partnership management duties and H & G's representation of Citizens. It could be argued that *Wortham,* because of its limiting language, is implied authority that

Karen Askins was not H & G's client for any purpose outside the partnership sphere. We do not accept *Wortham* as persuasive authority for that proposition, however, because the courts recognize that the policy considerations underlying the attorney-client privilege are not identical with those behind the conflict of interest rules.

■ ". . . [T]he basis for the rule against representing conflicting interests is broader than the basis for the attorney-client evidentiary privilege. The evidentiary privilege and the ethical duty not to disclose confidences both arise from the need to encourage clients to disclose all possibly pertinent information to their attorneys, and both protect only the confidential information disclosed. The duty not to represent conflicting interests, on the other hand, is an outgrowth of the attorney-client relationship itself, which is confidential, or fiduciary, in a broader sense. Not only do clients at times disclose confidential information to their attorneys; they also repose confidence in them. The privilege is bottomed only on the first of these attributes, the conflicting-interests rule, on both." (*E. F. Hutton & Company* v. *Brown* (S.D.Tex. 1969) 305 F.Supp. 371, 394, fns. omitted; see also *Industrial Indem. Co.* v. *Great American Ins. Co.* (1977) 73 Cal.App.3d 529, 536, fn. 5 [140 Cal.Rptr. 806]; *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 366, fn. 5 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]; *Western Continental Operating Co.* v. *Natural Gas Corp.*, *supra*, 212 Cal.App.3d at pp. 761-762; cf. *Tri-Growth Centre City, Ltd.* v. *Silldorf, Burdman, Duignan & Eisenberg* (1989) 216 Cal.App.3d 1139, 1151 [265 Cal.Rptr. 330] [triable issue of fact whether attorneys owed a fiduciary duty to partnership which included former individual clients].)

■ Citizens urges that we apply the entity, rather than the aggregate, theory of partnership law to the issue at hand, referring us to *Epstein* v. *Frank* (1981) 125 Cal.App.3d 111 [177 Cal.Rptr. 831], where the court stated:

"The authorities do not clearly delineate when a partnership will be regarded as an aggregate of individuals and when it will be considered as a separate entity. An analysis of the cases demonstrates that the concept to be utilized in any given case is dependent largely upon policy considerations and upon which concept will achieve a fair and equitable disposition of the issues in controversy. Thus, in *Reed* v. *Industrial Acc. Com.* (1937) 10 Cal.2d 191 [] a partnership was deemed to be an aggregate of individuals with the result that a workmen's compensation policy issued to one of the partners individually was held to cover an employee of the partnership. Conversely, the Supreme Court in *Evans* v. *Galardi* (1976) 16 Cal.3d 300 [] held that a limited partnership was to be deemed an entity so as to preclude a judgment

creditor of one of the limited partners from executing on partnership property.

"In the area of procedures, a partnership is treated substantially the same as a corporation, and an entity concept predominates. Thus, in order to acquire jurisdiction over a partnership the partnership entity must be designated as the defendant, and the naming of the individual partner is not sufficient. [Citations.] The interest of an individual partner in partnership assets is not subject to attachment or execution except on a claim against the partnership entity. [Citations.]

"Further, a summons may be served upon a partnership entity by serving an agent designated for service of process [citation] which is a concept more closely aligned with the service upon entities such as corporations than with service upon individual defendants.

". . . . . . . . . . . . . . . . . . . . . . . . .

"A limited partnership is regarded as an entity separate and apart from its partners when it is sued, when it is served with process, and when executing upon its assets. We can perceive of no compelling reason why, in determining the applicability of Code of Civil Procedure section 351, it should not be regarded as an entity, which, like a corporation, is considered to be permanently within the state, regardless of the whereabouts of its principals." (125 Cal.App.3d at pp. 119-120, fn. omitted.)

This general statement, which we accept as correct, provides no clues as to which view of a partnership's legal status should prevail in attorney conflict of interest cases.

### B. *Rules of Professional Conduct.*

Citizens relies on rule 3-600(A), which provides: "(A) In representing an organization, a member [of the State Bar] shall conform his or her representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement." Citizens argues that a partnership is an "organization" within the meaning of this rule, that a partnership's attorney must treat the partnership itself as the client, "and, therefore, the attorney need not also undertake the representation of the partner-members of the organization in their individual capacities." Askins responds by arguing that because the rule does not refer to partnerships or partners, it does not apply to them.

Askins's argument is unpersuasive. Although the rules do not define the term "organization," its common, ordinary meaning is sufficiently broad to

include partnerships. The pertinent dictionary definition of "organization" is "any unified, consolidated group of elements; systematized whole; esp., *a)* a body of persons organized for some specific purpose, as a club, union, or society." (Webster's New World Dict. (3d college ed. 1988) p. 954.) A partnership is "an association of two or more persons to carry on as co-owners a business for profit." (Corp. Code, § 15006, subd. (1).) In addition, the rule refers to the highest authorized "constituent" of the organization. A "constituent" is a component. (Webster's, *op. cit. supra,* p. 298.) We have no doubt that a partner is a component, and therefore a constituent, of a partnership.

Without belaboring the point, we see nothing in the text of rule 3-600(A) evidencing an intent to exclude partnerships from its ambit.

Askins also finds support in a comment included by the rule's drafters in the discussion immediately following the rule: "Rule 3-600 is not intended to enmesh members in the intricacies of the entity and aggregate theories of partnership."[4]

Askins apparently interprets this comment as indicating an intention to exclude partnerships from the rule. We read it otherwise. If the rule did not apply to partnerships, there was no need for the drafters to refer to partnerships in the discussion. Without a rule giving some direction to attorneys representing partnerships, they would have no way of knowing whether the entity theory or the aggregate theory governs when conflict of interest questions arise.[5] Absence of a rule would surely "enmesh attorneys in the intricacies" of the two theories. That is precisely what the drafters intended

---

[4]The comment must be read in the light of rule 1-100(C), which states: "Because it is a practical impossibility to convey in black letter form all of the nuances of these disciplinary rules, the comments contained in the Discussions of the rules, while they do not add independent basis for imposing discipline, are intended to provide guidance for interpreting the rules and practicing in compliance with them."

[5]The text of paragraphs (B), (C), and (D) of rule 3-600 discloses that the primary concern of the drafters was avoidance of conflicts of interest between the organization and one or more of its constituents, rather than conflicts which might arise between a constituent and third parties. Those paragraphs provide:

"(B) If a member acting on behalf of an organization knows that an actual or apparent agent of the organization acts or intends or refuses to act in a manner that is or may be a violation of law reasonably imputable to the organization, or in a manner which is likely to result in substantial injury to the organization, the member shall not violate his or her duty of protecting all confidential information as provided in Business and Professions Code section 6068, subdivision (e). Subject to Business and Professions Code section 6068, subdivision (e), the member may take such actions as appear to the member to be in the best lawful interest of the organization. Such actions may include among others:

"(1) Urging reconsideration of the matter while explaining its likely consequences to the organization; or

to avoid. By its clear statement in paragraph (A), rule 3-600 applies the entity theory ("the concept that the client is the organization itself"), and representation of partnerships is similar to representation of corporations and other organizations.

We agree with Citizens that because of rule 3-600(A), representation of a partnership does not, by itself, create an attorney-client relationship with the individual partners. That conclusion, however, does not dispose of the issue raised here, because it merely begs another question: does representation of a partnership necessarily preclude representation of the individual partners? If the answer to that question is negative, we must examine the circumstances under which an attorney may represent both the partnership and the partners and determine whether those circumstances are present here.

Paragraph (E) of rule 3-600 addresses this inquiry. It provides that an attorney representing an organization "may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 3-310. If the organization's consent to the dual representation is required by rule 3-310, the consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members."

The rule's use of the permissive "may" reinforces our conclusion that representation of individual partners does not automatically flow from representation of the partnership. Something more is required to create an attorney-client relationship with a partner. But the rule also makes clear that concurrent representation of the partnership and one or more of the partners is possible subject to the conflict of interest rules. The rule eschews a bright line pronouncement that a partnership attorney *always* represents the partners, or that he or she *never* does.

"(2) Referring the matter to the next higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest internal authority that can act on behalf of the organization.

"(C) If, despite the member's actions in accordance with paragraph (B), the highest authority that can act on behalf of the organization insists upon action or a refusal to act that is a violation of law and is likely to result in substantial injury to the organization, the member's response is limited to the member's right, and, where appropriate, duty to resign in accordance with rule 3-700.

"(D) In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a member shall explain the identity of the client for whom the member acts, whenever it is or becomes apparent that the organization's interests are or may become adverse to those of the constituent(s) with whom the member is dealing. The member shall not mislead such a constituent into believing that the constituent may communicate confidential information to the member in a way that will not be used in the organization's interest if that is or becomes adverse to the constituent." (Rule 3-600.)

Considering the mutability of circumstances surrounding an attorney's representation of a partnership, and the attorney's relationship with individual partners, we believe the rule's approach is sensible. All partnerships are not shaped by the same mold. The relationship a partnership attorney has with the individual partners will vary from case to case. A rule which may seem appropriate for an attorney representing a two-person general partnership may be entirely inappropriate for an attorney representing a limited partnership with scores or even hundreds of partners.

A bright line rule that an attorney representing a partnership automatically represents each individual partner as to the partner's personal interests would, when combined with the per se disqualification rule applied to concurrent representation of conflicting interests, cause unjust consequences when the individual partner had no reasonable expectation of the attorney's loyalty in matters unrelated to the partnership affairs. Disqualification in such cases would unfairly penalize third parties by depriving them of their chosen counsel, but we do not see any offsetting benefit to the public or the legal profession. On the other hand, a bright line rule that a partnership attorney may never have a duty of loyalty to individual partners could, under some circumstances, undermine public confidence in lawyers by permitting an attorney to represent an adverse party when the individual partner had a reasonable expectation that the attorney would not do so.

Thus, while we can conclude that H & G's representation of Westside did not automatically make Karen Askins a client, additional facts and circumstances may have done so.

### III. *Representation of Individual Partner(s) Rests on an Express or Implied Contract*

■ "Except for those situations where an attorney is appointed by the court, the attorney-client relationship is created by some form of contract, express or implied, formal or informal. [Citation.]" (*Nichols* v. *Keller* (1993) 15 Cal.App.4th 1672, 1684 [19 Cal.Rptr.2d 601]; see generally, Friedman, *The Creation of the Attorney-Client Relationship: An Emerging View* (1986) 22 Cal. W.L.Rev. 209.) If there is a court appointment or an express agreement by the partnership attorney to represent an individual partner, the attorney-client relationship is established and application of the conflict of interest rules follows as of course. The difficult cases will be those, like this, in which the relationship can exist only if implied from the circumstances.

■ "An implied contract is one, the existence and terms of which are manifested by conduct." (Civ. Code, § 1621.) "The distinction between

*express* and *implied in fact* contracts relates only to the *manifestation of assent*; both types are based upon the expressed or apparent intention of the parties." (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 11, p. 46, italics in original.)

■ Without any attempt at being exhaustive, we can identify some factors which might support, or undercut, implication of an attorney-client relationship with an individual partner in any particular case. The type and size of the partnership obviously have a bearing, as already noted. So do the nature and scope of the attorney's engagement by the partnership. The kind and extent of contacts, if any, between the attorney and the individual partner might be important factors. The same is true as to the attorney's access to information (e.g., partnership financial information) relating to the individual partner's interests.

■ As noted earlier, the rule prohibiting simultaneous representation of adverse interests is said to be an outgrowth of the confidential nature of an attorney-client relationship. Because a client reposes confidence in his or her attorney, the attorney owes the client a duty of undivided loyalty. (*E. F. Hutton & Company* v. *Brown, supra*, 305 F.Supp. at pp. 393-394; *Developments in the Law—Conflicts of Interest in the Legal Profession* (1981) 94 Harv.L.Rev. 1244, 1292-1315.) ■ For that reason, we believe that in determining whether an attorney-client relationship exists in cases like this, primary attention should be given to whether the totality of the circumstances, including the parties' conduct, implies an agreement by the partnership attorney not to accept other representations adverse to the individual partner's personal interests. (See Friedman, *The Creation of the Attorney-Client Relationship: An Emerging View, op. cit. supra*, 22 Cal. W.L.Rev. at p. 231, suggesting that one of the most important facts involved in finding an attorney-client relationship is "the expectation of the client based on how the situation appears to a reasonable person in the client's position.")

With the foregoing principles in mind we now turn to the record before us.

IV. *Application of Law to Case*

■ The question of whether an attorney-client relationship exists is one of law. (*Houston Gen. Ins. Co.* v. *Superior Court* (1980) 108 Cal.App.3d 958, 964-965 [166 Cal.Rptr. 904]; *American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 590-591 [113 Cal.Rptr. 561]; *Kraus* v. *Davis* (1970) 6 Cal.App.3d 484, 491-492 [85 Cal.Rptr. 846].) However, when the evidence is conflicting, the factual basis for the determination must be determined before the legal question is addressed. (*Ibid.*)

■ The declarations submitted by the parties in connection with the disqualification motion reveal few factual disputes. The most significant difference concerns the timing and content of the discussion in which Harriman informed Karen Askins of his firm's representation of Citizens. Harriman's declaration states that "it was understood that H & G would be representing [Westside] and not Mrs. Askins in her individual capacity" and that he "explained this during my conversation with Mrs. Askins." Karen Askins's declarations, although not directly denying Harriman's claim that he expressly limited his representation to Westside, paint a somewhat different picture.

The record does not show that the court made any preliminary factual determinations or felt it necessary to do so before reaching the legal conclusion that Karen Askins was H & G's client.[6] ■ ■ We do not have a reporter's transcript of either the hearing on the motion for disqualification or the hearing on motion for reconsideration. The court's written ruling on the motion for disqualification does not contain any factual findings. The order denying the motion for reconsideration is somewhat more explanatory but does not reflect any factual determinations.

■ Generally, in the absence of express findings, we will presume the court found in favor of the prevailing party on all disputed factual issues. (See, e.g., *Kulko* v. *Superior Court* (1977) 19 Cal.3d 514, 519, fn. 1 [138 Cal.Rptr. 586, 564 P.2d 353].) Our task in such cases is to determine if the presumed findings are supported by substantial evidence. (See, e.g., *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) That presumption is not appropriate, though, when the record reveals the court based its ruling on an interpretation of law, rather than a resolution of disputed facts. (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 477 [198 Cal.Rptr. 538, 674 P.2d 240].) ■ Here, the trial court's subsequent order denying the motion for reconsideration indicates that the disqualification order was based on the court's legal conclusion that Karen Askins was a client of H & G solely by reason of the firm's representation of Westside. In its subsequent order the court referred to H & G's claim that Harriman believed Karen Askins was simply an employee, rather than an owner, of Westside. The order continues:

"The issue therefore revolves around Mr. Harriman's knowledge of whether or not [Karen] Askins had an ownership interest in the business. [*H & G*] *concede that their representation was concurrent* (Points and Authorities, p. 3). The tests [*sic*] for disqualifying an attorney for concurrent

[6] A statement of decision was not requested and is not required for disqualification motions. (*Higdon* v. *Superior Court, supra,* 227 Cal.App.3d at pp. 1670-1671.)

representation is not the 'substantial relationship' test (the test for FORMER clients). The proper test at issue is a policy promulgated by the Rules of Professional Conduct: 'a member shall not concurrently represent clients whose interest [*sic*] conflict, except with their informed written consent.' Rule 3-310(B).

"It would be appealing to rule in favor of Harriman and Gabrielli in that they no longer represent [Karen] Askins and therefore there is no longer a concurrent representation issue. Unfortunately, the attorney cannot simply withdraw from a case to render a client, a former client. *Truck Ins. Exchange v. Fireman's Fund Insurance Co.* (1992) 6 Cal.App.4th 1050. . . ." (Italics added.)

The concession that H & G's "representation was concurrent" referred to in the order, however, was only that H & G represented Westside and Citizens concurrently. In all of its papers submitted before both hearings, H & G strenuously denied that it ever represented Karen Askins. H & G's concession that it represented Westside and Citizens concurrently would have significance only if its representation of Westside included representation of Karen Askins as a matter of law. The order denying reconsideration gives it that significance by implying that if Karen Askins was a part owner of Westside, she was automatically a client of H & G notwithstanding Harriman's lack of knowledge concerning her status.

At oral argument, Askins's counsel agreed with our interpretation of the record and conceded that the trial court's disqualification order was based solely on the legal conclusion that representation of a partnership necessarily includes representation of the individual partners. In light of our preceding discussion, we must, therefore, conclude that the court erred. The error was understandable given the lack of direct case authority on the issue and this court's prior decision in *Woods* v. *Superior Court, supra*, 149 Cal.App.3d 931, which was relied on heavily by Askins.

Under the circumstances, we believe the appropriate disposition is to remand the case for the court to reconsider the disqualification motion in light of the legal principles we have discussed in this opinion and order disqualification only if the court determines that an attorney-client relationship between H & G and Karen Askins during the relevant period is implied from the totality of circumstances.

### DISPOSITION

The petition is granted. Let a writ of mandate issue directing respondent court to vacate its order disqualifying counsel in the underlying proceedings,

dated August 14, 1992, and to conduct such further proceedings as it deems necessary consistent with the views expressed herein.

Ardaiz, Acting P. J., and Buckley, J., concurred.

A petition for a rehearing was denied July 26, 1993, and the petition of real parties in interest for review by the Supreme Court was denied September 16, 1993.