[No. G035923. Fourth Dist., Div. Three. Jan. 30, 2006.]

CHARLES BENNINGHOFF, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE STATE BAR OF CALIFORNIA, Real Party in Interest.

COUNSEL

James S. Link for Petitioner.

No appearance for Respondent.

Marie M. Moffat, Lawrence C. Yee, Richard J. Zanassi, Scott J. Drexel, William J. Cox and Mark Torres-Gil for Real Party in Interest.

OPINION

**IKOLA, J.**—Petitioner Charles Benninghoff, a former lawyer who resigned from the State Bar of California (State Bar) with disciplinary charges pending, seeks an extraordinary writ reversing an order whereby the court assumed jurisdiction over his practice. The court found Benninghoff had been illegally practicing law by representing parties before federal and state agencies as a self-styled "lay representative." Benninghoff contends that laypeople may represent parties in state administrative hearings, and so this kind of representation must not constitute the practice of law. Because he was not practicing law, he argues, the court lacked any basis to assume jurisdiction over his lay practice.

Benninghoff's conclusions do not follow from his premise. Representing parties in state administrative hearings constitutes the practice of law. As a "lay representative," Benninghoff used his legal knowledge to offer legal advice and counsel, prepare legal documents, and attempt to secure his clients' legal rights. If laypeople are allowed to engage in this kind of representation—an issue we need not decide—it would be an exception to the general rule that only active bar members may practice law. At most, the

exception would allow laypeople to practice law in state administrative hearings. It does not render this work anything other than the practice of law. By representing parties in state administrative hearings, Benninghoff practiced law in California—something he has lost the right to do by reason of his resignation from the State Bar with disciplinary charges pending.

But Benninghoff is correct on one point. The court could not assume jurisdiction over his federal practice, because federal regulations governing practice before federal courts and agencies preempt state law prohibiting the unauthorized practice of law. Thus, we grant his petition to this extent only.

## FACTS

In 1999, Benninghoff pleaded guilty to conspiring to defraud the United States and three other federal felonies.[1] He resigned from the State Bar with disciplinary charges pending. In his resignation letter, Benninghoff "acknowledge[d] that [he] will be ineligible to practice law or to advertise or hold [him]self out as practicing or as entitled to practice law."

No longer an active member of the State Bar, Benninghoff plied his trade outside the court system. He represented professional licensees in state administrative hearings and federal prisoners in prison transfer applications. He sent direct mail solicitations and operated Web sites advertising his services as a "professional advocate." Eventually, the Medical Board of California (Medical Board) asked the State Bar to clarify whether Benninghoff could represent parties in its disciplinary hearings. While the State Bar investigated the matter, two administrative law judges ruled on petitions to disqualify Benninghoff from Medical Board hearings. Both judges found that Benninghoff was practicing law by representing parties in administrative hearings.

The State Bar filed an application asking the court to assume jurisdiction over Benninghoff's practice. The court granted the order. Benninghoff petitioned for an extraordinary writ, and later filed a motion for a partial stay to allow him to continue representing federal prisoners.

---

[1] Benninghoff pleaded guilty to one count of violating section 371 of title 18 of the United States Code (conspiracy to defraud United States), one count of violating section 1001 of title 18 of the United States Code (making false statements), and two counts of violating section 1014 of title 18 of the United States Code (making false statements to a federally insured bank).

## DISCUSSION

This is the first appellate opinion construing Business and Professions Code section 6180,[2] which authorizes a court to assume jurisdiction over the law practice of an attorney who "dies, resigns, becomes an inactive member of the State Bar, is disbarred, or is suspended from the active practice of law . . . ." One explanation for the dearth of appellate opinions is that an order granting an application to assume jurisdiction is not appealable; review may be sought only by a writ petition. (§ 6180.13.)

The first issue we must address is the standard of review. As usual, we review the court's implied and express factual findings for substantial evidence, and review its statutory interpretation independently. (See *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378] ["When the trial court has resolved a disputed factual issue, the appellate courts review the ruling according to the substantial evidence rule"]; see also *Harbor Island Holdings v. Kim* (2003) 107 Cal.App.4th 790, 794 [132 Cal.Rptr.2d 406] [questions of law reviewed de novo].)

But the ultimate determination to assume jurisdiction over a law practice rests in the court's discretion. The statute says the court "*may* make an order assuming jurisdiction" if the lawyer dies or ceases active membership in the State Bar. (§ 6180.5, italics added; accord, *In re Richard E.* (1978) 21 Cal.3d 349, 354 [146 Cal.Rptr. 604, 579 P.2d 495] ["The ordinary import of 'may' is a grant of discretion"].) Also, we imagine that when most lawyers die or resign, clients usually pick up their files and obtain new counsel without court intervention. The court's decision to assume jurisdiction over a practice to protect the clients is akin to a decision to appoint a receiver, which calls for the exercise of discretion. (*City and County of San Francisco v. Daley* (1993) 16 Cal.App.4th 734, 744 [20 Cal.Rptr.2d 256].) Thus, we will review the order assuming jurisdiction over Benninghoff's practice for an abuse of discretion.

### Benninghoff May Not Represent Parties in State Administrative Hearings

Benninghoff contends that laypeople may represent parties in state administrative hearings. He relies on various sections of the Administrative Procedure Act (Gov. Code, § 11370 et seq.; hereinafter APA) that refer to a party's

---

[2] All further statutory references are to the Business and Professions Code unless otherwise stated.

"attorney or other authorized representative."[3] He also relies on several regulations that refer to a party's "counsel or other representative."[4]

The State Bar hedges its bet on the question. In its brief, it assumes for the sake of argument that laypeople may represent parties in state administrative hearings. But it also directs our attention to the Medical Board's amicus curiae brief filed below, which contended that laypeople have no such right. The Medical Board relied primarily on Government Code section 11509. This statute requires agencies to notify parties that they "have the right to be represented by an attorney at [their] own expense," but makes no mention of any right to be represented by a layperson. It also relied on other APA sections referring to a party's attorney without mentioning any other kind of representative. It contends that the APA sections and regulations mentioning "authorized representatives" or "other representatives" should be construed to refer to corporations, who have the right to represent themselves in agency hearings and must do so through a natural person: i.e., a "representative."

We decline to resolve this issue. To decide this case, we need not resolve the broad question of whether laypeople in general may represent parties in state administrative agencies. Rather, we will assume that laypeople may do so, and turn to the specific question of whether Benninghoff may do so, too.

█ Our specific question arises because Benninghoff is not the typical layperson—he used to be a lawyer. The statute prohibiting the unauthorized practice of law treats true laypeople differently than lawyers who have lost their bar membership. Section 6126, subdivision (a) addresses true laypeople. It provides that "[a]ny person . . . practicing law who is not an active member of the State Bar, *or otherwise authorized pursuant to statute or court rule to practice law in this state* at the time of doing so, is guilty of a misdemeanor." (Italics added.) Section 6126, subdivision (b) addresses lawyers like Benninghoff. It provides that "[a]ny person who . . . has resigned from the State Bar with charges pending, and thereafter practices or attempts to practice law . . . is guilty of a crime punishable by imprisonment in the state prison or county jail."[5] Thus, a true layperson may practice law when "authorized

---

[3] (See Gov. Code, §§ 11440.20, subd. (a) [service of notices], 11440.60, subd. (c) [authorization to submit written communication to agency], 11455.30, subd. (a) [attorney fees in general], & 11520, subd. (b) [attorney fees for failure to appear].)

[4] (See Cal. Code Regs., tit. 1, §§ 1015 [notice of representation], 1018 [requests for hearing], 1028 [settlement conferences], 1032 [accommodations], 1034 [peremptory challenges], & 1040 [sanctions].)

[5] The subdivision strips the privilege of practicing law equally from disbarred lawyers, suspended lawyers, lawyers involuntarily enrolled as inactive State Bar members, and lawyers who resign from the State Bar with charges pending. (§ 6126, subd. (b).) Lacking a better term, we will refer to these as "defrocked" lawyers.

pursuant to statute or court rule"; a defrocked lawyer like Benninghoff may not practice law at all. (§ 6126, subds. (a) & (b).)

■ This leads us to determine whether the representation of parties in state administrative hearings constitutes practicing law. The State Bar Act, section 6000 et seq., was enacted in 1927 to set forth "a comprehensive scheme regulating the practice of law in the state." (*Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 127 [70 Cal.Rptr.2d 304, 949 P.2d 1] (*Birbrower*).) It provided that only active State Bar members may practice law, but did not itself define the term "practice law." (*Id.* at p. 128.) Thus, as subsequent courts found, the State Bar Act implicitly adopted the common law definition of "practice law" as " ' "the doing and performing services in a court of justice in any matter depending therein throughout its various stages and in conformity with the adopted rules of procedure. But in a larger sense, it includes legal advice and counsel and the preparation of legal instruments and contracts by which the legal rights are secured although such matter may or may not be depending in a court." ' " (*Id.* at p. 142.)

The California Supreme Court addressed what it means to "practice law" in *Baron v. City of Los Angeles* (1970) 2 Cal.3d 535 [86 Cal.Rptr. 673, 469 P.2d 353] (*Baron*). There, the court held that the State Bar Act preempted a city ordinance governing lobbyists to the extent it purported to apply to lawyers practicing law. (*Id.* at pp. 543–544.) Thus, it had to differentiate lawyers engaged in lobbying from lawyers engaged in practicing law. It conceded that "[i]t is difficult to draw logical distinctions among the varied services performed by lawyers" (*id.* at p. 542), and that "ascertaining whether a particular activity falls within this general definition [of the 'practice of law'] may be a formidable endeavor." (*Id.* at p. 543.)

■ Nonetheless, our Supreme Court had no difficulty resolving the "[l]ess perplexing" question of "whether participation on behalf of another in hearings and proceedings before a board or commission constitutes the practice of law." (*Baron, supra,* 2 Cal.3d at p. 543.) "The cases uniformly hold that the character of the act, and not the place where it is performed, is the decisive element, and if the application of legal knowledge and technique is required, the activity constitutes the practice of law, even if conducted before an administrative board or commission." (*Ibid.*)[6]

---

[6] (Cf. Rules Prof. Conduct of State Bar, rule 1-311(B)(2) [prohibiting active bar members from retaining resigned lawyers to "[a]ppear on behalf of a client in any hearing or proceeding or before any judicial officer . . . public agency . . . or hearing officer"].)

We conclude that Benninghoff practiced law by representing parties in state administrative hearings. By his own admission, he "made numerous appearances before various administrative and regulatory agencies in the State of California." The record suggests that, as part of his "lay" practice, he analyzed agency disciplinary guidelines, advised clients how to defend against disciplinary charges, responded to discovery requests, prepared hearing books and declarations, and examined witnesses at hearings. In representing a client before the California Nursing Board, he advised her what her best defense would be and the evidence needed to support her defense, prepared declarations, requested a continuance, prepared her to testify, "began trial preparation," and negotiated a settlement. Benninghoff thus gave legal advice to his clients and prepared legal documents attempting to secure their legal rights, which called for the application of his "legal knowledge and technique." (*Baron, supra,* 2 Cal.3d at p. 543; see also *Birbrower, supra,* 17 Cal.4th at p. 128.) This is the practice of law.

We reject Benninghoff's suggestion that representing parties in state administrative hearings cannot constitute practicing law because laypeople (arguably) are allowed to do so. As we explained *ante,* the law differentiates between laypeople and defrocked lawyers. Lawyers who resign with disciplinary charges pending may not practice law, without exception. (§ 6126, subd. (b).) In contrast, laypeople may practice law when "authorized pursuant to statute or court rule." (§ 6126, subd. (a).) If the various APA sections and regulations that Benninghoff cites do in fact allow laypeople to represent parties in administrative hearings, they constitute the statutory authorization contemplated by section 6126, subdivision (a).

Two early cases clarify the Legislature's prerogative to create statutory exceptions by which laypeople may practice law. In a pre-State Bar Act case, *In re Hittson* (1918) 39 Cal.App. 91 [178 P. 149], the court held that a disbarred attorney could represent parties in the justice courts, because at that time the Code of Civil Procedure allowed any person to represent a party in a justice court, and precluded disbarred attorneys only " 'from practicing *as such attorney* . . . .' " (*In re Hittson,* at pp. 92–93, italics added.) The court concluded that disbarment does no more than "take away the rights granted [to lawyers] by the order of admission to practice." (*Id.* at p. 93.) But the court went on to state, "[w]ithout doubt the [L]egislature would have the right to provide that any person who had been disbarred from the practice of law should be ineligible to appear in a justice's court to represent another, and we venture the suggestion that such legislation is both appropriate and desirable." (*Ibid.*) Nine years later, the Legislature enacted the State Bar Act, which it later amended to include section 6126 barring defrocked lawyers from practicing law.

In *Eagle Indem. Co. v. Industrial Acc. Com.* (1933) 217 Cal. 244 [18 P.2d 341] the Supreme Court allowed a layperson to recover attorney fees for his successful representation of an injured employee before the Industrial Accident Commission. (*Id.* at pp. 248–249.) The parties did not dispute that "the services performed by [the layperson] in the prosecution of the claim before the Commission were legal services." (*Id.* at p. 247.) And the court noted that "as a general rule, no one may practice law without a license." (*Ibid.*) But it also noted that "[e]xceptions to this general rule have been established and long recognized." (*Ibid.*) It then reviewed the Workmen's Compensation Act, and concluded that "the [L]egislature has [therein] provided a further exception to the general rule, as to practice before the Industrial Accident Commission." (*Id.* at p. 248.)[7] If the APA allows lay representation, presumably it does so as another exception to the general rule against laypeople practicing law. It does not remove that representation from the practice of law, or invalidate the absolute bar against defrocked lawyers practicing law.

We give little weight to the other sources upon which Benninghoff relies. He submitted an amicus curiae brief filed below by a law professor and an Attorney General opinion concluding that the APA allows lay representation. Neither source considered whether defrocked lawyers, as opposed to true laypeople, may represent parties in state administrative hearings.[8] He also submitted a Legislative Counsel opinion, which did opine that defrocked lawyers may do so. But the opinion overlooked section 6126, subdivision (b), which bars defrocked lawyers from practicing law in California. Notably, the Attorney General and Legislative Counsel agreed that representing parties in state administrative hearings constitutes practicing law.

Thus, Benninghoff, whom the State Bar Act prohibits from practicing law, may not represent parties in state administrative hearings. This representation constitutes the practice of law, from which defrocked lawyers are categorically barred.

Our conclusion is bolstered by public policy considerations. Benninghoff was convicted of four federal felonies, including conspiracy to defraud the United States and making false statements. Disbarment was an inevitable

---

[7] Today, the Workers Compensation Appeals Board expressly prohibits disbarred lawyers from representing parties before it. (Cal. Code Regs., tit. 8, § 10779.)

[8] Similarly, we deny Benninghoff's request that we take judicial notice of the statements of decisions and Attorney General's briefs from two San Francisco Superior Court cases involving his lay representation. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 [101 Cal.Rptr.2d 200, 11 P.3d 956] ["any matter to be judicially noticed must be relevant to a material issue"].) Those cases addressed whether lay representation deprives licensees of a fair administrative hearing, without analyzing whether a defrocked lawyer may practice law as a "lay representative."

formality, as "the Supreme Court shall summarily disbar" an attorney convicted of any felony requiring the specific intent to defraud or make false statements. (§ 6102, subd. (c).) In addition, his offenses were crimes of moral turpitude, which is an independent basis for summary disbarment. (*Ibid.*; see also *In re Lesansky* (2001) 25 Cal.4th 11, 16 [104 Cal.Rptr.2d 409, 17 P.3d 764] [offense reveals moral turpitude if it "shows a deficiency in any character trait necessary for the practice of law (such as trustworthiness, honesty, [or] candor)"].) "Moral turpitude has been defined by many authorities as an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general." (*In re Craig* (1938) 12 Cal.2d 93, 97 [82 P.2d 442].) Benninghoff avoided the indignity of actual disbarment only by resigning from the State Bar with disciplinary charges pending. Nonetheless, he suffers the same disqualifications as a bar member who has been tried on disciplinary charges and found wanting. (§ 6126, subd. (b).) He is unfit to practice law; he has forfeited the privilege of speaking for others under the law.

As our Supreme Court noted shortly after the State Bar Act passed, "[a]ttorneys and counselors at law . . . have for centuries been required to undergo certain courses of preparation and to assume certain solemn obligations . . . not only with respect to their relation to the courts, but also with regard to their relation to the public at large." (*State Bar of California v. Superior Court* (1929) 207 Cal. 323, 331 [278 P. 432].) The public interest must "be safeguarded against the ignorances or evil dispositions of those who may be masquerading beneath the cloak of the legal and supposedly learned and upright profession." (*Ibid.*) The public interest is best served by preventing Benninghoff from masquerading as a lay representative. Thus, the court did not abuse its discretion in assuming jurisdiction over Benninghoff's practice before state administrative agencies.

*Section 6180.14 Does Not Exempt Benninghoff from the Court's Jurisdiction*

As a fallback position, Benninghoff contends that the court lacked authority to assume jurisdiction over his practice in any event. He notes that section 6180.14 provides, "[t]his article does not apply to legal services rendered as an employee, or under a contract which does not create the relationship of lawyer and client." Benninghoff asserts that he falls within this exception because his written agreements with his clients disclaim any lawyer-client relationship.

We must therefore construe section 6180.14. "Our primary objective in interpreting a statute is to determine and give effect to the underlying legislative intent," turning first to the statutory language. (*City of Brentwood v.*

*Central Valley Regional Water Quality Control Bd.* (2004) 123 Cal.App.4th 714, 722 [20 Cal.Rptr.3d 322].) "Nonetheless, it is also well recognized that '[t]he literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole.' " (*Kramer v. Intuit, Inc.* (2004) 121 Cal.App.4th 574, 579 [18 Cal.Rptr.3d 412] (*Kramer*).)

■ Section 6180.14 cannot withstand a literal reading. The exception it purports to create for "legal services rendered . . . under a contract which does not create the relationship of lawyer and client" is self-contradictory. (*Ibid.*) " 'When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established *prima facie*.' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1148 [86 Cal.Rptr.2d 816, 980 P.2d 371].) It is unclear what contracts, if any, would both (a) call for legal services to be provided, but (b) not create a lawyer-client relationship.[9]

■ The exception cannot refer to contracts that do not create a lawyer-client relationship on the basis that the person providing legal services is no longer a lawyer. We must consider section 6180.14 "in the context of the . . . statutory scheme of which it is a part." (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) ■ Section 6180 et seq. applies *only* to former lawyers. It ensures that their practices are properly wound up and that their clients will actually find new lawyers. (§§ 6180.1, 6180.5; see also 1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 112, p. 149.) Indeed, "[a]s used in this article, 'attorney' means a member *or former member* of the State Bar." (§ 6180.14, italics added.) We cannot read section 6180.14 as creating an exception to section 6180 et seq. for former lawyers—the precise people subject to that section in the first place. ■ "If . . . application of an apparently unambiguous statute would lead to an absurd result, the court can presume the Legislature did not intend the apparent meaning." (*Sanctity of Human Life Network v. California Highway Patrol* (2003) 105 Cal.App.4th 858, 866 [129 Cal.Rptr.2d 708]; accord, *Kramer, supra,* 121 Cal.App.4th at pp. 578–579.)

---

[9] Of course, lawyers may provide nonlegal services without entering into lawyer-client relationships. (Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2005) ¶ 3:46, p. 3-17.) Lawyers may also limit the scope of their representation to certain client matters without creating a lawyer-client relationship as to other matters. (*Id.* at ¶ 3:33, p. 3-10.) And they may decline a representation altogether, providing no legal services and creating no lawyer-client relationship at all. (*Id.* at ¶ 3:48, p. 3-19; *People v. Gionis* (1995) 9 Cal.4th 1196, 1209–1212 [40 Cal.Rptr.2d 456, 892 P.2d 1199].) But none of these situations pertain here.

And contrary to Benninghoff's suggestion, it cannot refer to contracts that require legal services to be provided but purport to disclaim any lawyer-client relationship. Such disclaimers are ineffective. (See State Bar Standing Com. on Prof. Responsibility, and Conduct, Formal Opn. No. 2004-165 [written disclaimer "does not by itself prevent the existence of an attorney-client relationship"].)[10] A retention agreement is like any other contract creating a legal relationship: " 'The nature of the instrument is not to be determined by what the parties called it. [Citation.] Its nature is to be determined by its legal effect.' " (*Rosen v. E.C. Losch Co.* (1965) 234 Cal.App.2d 324, 331–332 [44 Cal.Rptr. 377].) "The label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced." (*S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 349 [256 Cal.Rptr. 543, 769 P.2d 399]; accord, Civ. Code, § 3528 ["The law respects form less than substance"].)

Thus, whatever the exception of section 6180.14 may encompass, it does not apply to defrocked lawyers who unlawfully continue to practice law. It does not refer to contracts that would otherwise create a lawyer-client relationship, if only the lawyer had not been defrocked. And it does not refer to contracts that attempt to disclaim the existence of the very lawyer-client relationships that they in fact create.

As shown *ante*, Benninghoff provided legal services to his clients by representing them in administrative hearings. His retention agreements with his clients therefore would have created lawyer-client relationships, if only Benninghoff had not resigned from the State Bar with disciplinary charges pending. We conclude that, for purposes of this section, Benninghoff has "the relationship of lawyer and client" (§ 6180.14) with the licensees he represents in administrative hearings. Thus, section 6180.14's exception does not apply to Benninghoff, regardless of the disclaimers in his retention agreements. As a defrocked lawyer who nonetheless continued to provide legal services to his clients, Benninghoff was subject to the court assuming jurisdiction over his practice.[11]

---

[10] (See also State Bar Standing Com. on Prof. Responsibility and Conduct, Formal Opn. No. 1999-154 [while lawyer performing nonlegal services may disclaim any intent to provide legal services, "no disclaimer will be effective if [the lawyer] is in fact performing legal services or offering legal advice"]; Chiu, *The Ethical Limits of eLawyering: Resolving the Multijurisdictional Dilemma of Internet Practice through Strict Enforcement* (2004) UCLA J. L. & Tech. Notes 1 ["in determining whether an actual attorney-client relationship exists, courts have largely ignored these disclaimers [of an attorney-client relationship] . . . . 'a lawyer cannot avoid liability by saying that she is not really representing a client when, in fact, she is representing a client' "].)

[11] The Legislature recently enacted section 6126.3, which allows the court to assume jurisdiction over a layperson's unlawful law practice. The legislative history notes that it is a misdemeanor for persons who are not active bar members or otherwise authorized to practice

*The Court May Not Assume Jurisdiction over Benninghoff's Federal
Practice*

As discussed *ante*, state law bars Benninghoff from practicing law in California, including representing parties in administrative hearings. In his motion for a partial stay, Benninghoff contends that state law cannot interfere with his representation of federal prisoners seeking prison transfers from the U.S. Department of Justice.

■ We must agree. "The [State Bar] Act does not regulate practice before United States courts." (*Birbrower, supra,* 17 Cal.4th at p. 130.) Rather, "[t]he State Bar Act and other statutes enacted for the purpose of regulating the practice of law in this state are applicable to our state courts only." (*In re McCue* (1930) 211 Cal. 57, 66 [293 P. 47].)

■ More broadly, state law cannot restrict the right of federal courts and agencies to control who practices before them. In *Sperry v. State of Florida* (1963) 373 U.S. 379 [10 L.Ed.2d 428, 83 S.Ct. 1322], the United States Supreme Court vacated a state court injunction prohibiting a layperson from representing parties in the U.S. Patent Office. (*Id.* at pp. 381, 404.) The court conceded that patent prosecution constitutes the practice of law, and that Florida law validly prohibited laypeople from practicing law in the state. (*Id.* at p. 383.) But federal regulations allowing nonlawyers to prosecute patents preempted state laws barring the unlicensed practice of law. (*Id.* at pp. 384–385.) The court concluded that a state "may not deny to those failing to meet its own qualifications the right to perform the functions within the scope of the federal authority." (*Id.* at p. 385; see also *Augustine v. Department of Veterans Affairs* (Fed.Cir. 2005) 429 F.3d 1334, 1339–1340 ["state law purporting to govern practice before a federal administrative agency would be invalid. [¶] . . . [¶] California has no authority to require that attorneys practicing before the [U.S. Merit Systems Protection] Board obtain a state license"]; *In re Poole* (9th Cir. 2000) 222 F.3d 618, 620 ["Once federal admission is secured, a change in circumstances underlying state admission . . . is 'wholly negligible' on the right to practice before a federal court"].) Thus, the court erred by assuming jurisdiction over Benninghoff's federal practice.

---

law to hold themselves out as lawyers. (Legis Counsel's Dig., Sen. Bill No. 894 (2005–2006 Reg. Sess.) p. 2172.) This language mirrors the language of section 6126, subdivision (a), which applies to true laypeople, not defrocked lawyers. This suggests that section 6180 et seq., not section 6126.3, provides the appropriate statutory authorization for the court to assume jurisdiction over the practice of a defrocked lawyer who continues to practice law.

## DISPOSITION

The petition is granted in part. Let a peremptory writ of mandate issue directing the court to modify its June 17, 2005 order to relinquish jurisdiction over Benninghoff's federal practice, and require the State Bar to return any seized materials regarding his federal practice. The order as modified is affirmed. The request for judicial notice is denied. In the interests of justice, each party shall bear its own costs in this writ proceeding. Finally, pursuant to rule 24(b)(3) of the California Rules of Court, and to promote the interests of justice, this decision is final in this court fifteen days after its filing.

O'Leary, Acting P. J., and Moore, J., concurred.

A petition for a rehearing was denied February 10, 2006, and petitioner's petition for review by the Supreme Court was denied April 19, 2006, S141459. Kennard, J., was of the opinion that the petition should be granted.