Filed 9/28/17

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DAVIS TEST ONLY SMOG TESTING et al., | C079354 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2014-80001898-CU-WM-GDS) |
| v. | |
| DEPARTMENT OF CONSUMER AFFAIRS, BUREAU OF AUTOMOTIVE REPAIR, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kelly, Judge. Affirmed.

Law Offices of Linda Foster and Linda Foster for Plaintiffs and Appellants.

Kamala D. Harris and Xavier Becerra, Attorneys General, Linda K. Schneider, Senior Assistant Attorney General, Janice K. Lachman, Karen R. Denvir and Daniel McGee, Deputy Attorneys General, for Defendant and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II and III.

1

This case involves citations issued to smog technician Marc Madison and his employer Davis Test Only Smog Testing, doing business as Citrus Heights Star Smog (Star Smog), after Madison passed an unpassable vehicle brought to the business by the Department of Consumer Affairs, Bureau of Automotive Repair (Bureau) for a smog inspection. The Bureau had replaced the working air injection system (part of the emissions control system) with a nonworking air injection system and did not attach a belt to the pulley to power the air injection system. Star Smog was assessed a $1,000 fine, and Madison was ordered to complete a Bureau training course.

Star Smog and Madison appealed the citations, and the case was heard by an administrative law judge. Star Smog and Madison acknowledged that Madison passed a vehicle that should not have passed the smog inspection, but they argued that the relevant regulations and guidelines from the Bureau were vague and did not give Madison notice that he needed to determine whether a belt was attached to the air injection system. At the administrative hearing, Star Smog, a corporation, was represented by Daniel McGarry, its former secretary/treasurer, not an attorney. Madison personally appeared. The administrative law judge rejected the arguments of Star Smog and Madison and issued a proposed decision upholding the citations, which proposed decision the Bureau adopted.

Star Smog and Madison filed a petition for writ of administrative mandamus, making the same arguments in the superior court. The superior court denied the petition, and Star Smog and Madison appeal.

Star Smog and Madison contend on appeal that the administrative decision is void because Star Smog and Madison were represented by a nonattorney. We conclude that Star Smog's decision to send its former secretary/treasurer to represent it in the administrative hearing did not render the decision void. We also conclude that Madison properly represented himself.

We therefore affirm.

2

BACKGROUND

As part of the Bureau's responsibilities to enforce smog inspection laws, an employee of the Bureau, Michael C. Roberts, modified the emissions control system of a 1985 Chevrolet S-10 Blazer by removing the air injection pump and the belt attached to the pump, which are part of the vehicle's emissions control system. Roberts replaced those parts with an air injection pump that was seized up (nonfunctional) and a shorter belt that bypassed the pulley on to the air injection pump, attaching the belt only to the alternator and water pump. This left the air injection pump without power. The pulley to which a belt would be attached to power the air injection pump was visibly unconnected. To render the air injection system functional, it would have been necessary to replace the air injection pump and attach a belt to power it.

An undercover operative of the Bureau took the Blazer to Star Smog, where Madison performed a smog inspection and passed the vehicle, stating that the vehicle passed both a visual inspection and a functional test and that the vehicle had "Pump Air Injection."

The Bureau issued citations to Star Smog and Madison for violations of Health and Safety Code sections 44012, subdivision (f) and 44032. The citations required Star Smog to pay a $1,000 fine and Madison to complete an eight-hour certified training course through the Bureau.

Star Smog and Madison appealed the citations, and an administrative law judge held an administrative hearing on the matter. Madison testified that there are two kinds of air injection pumps: belt-driven and electric. He said that the vacuum diagram and underhood emissions label on the Blazer did not show that the air injection pump was connected to a belt. Roberts, the Bureau employee, testified that a smog technician should have observed that there was no belt attached to the air injection pump pulley. The presence of a pulley should have alerted the smog technician that the air injection pump was belt-driven, not electric. Star Smog and Madison acknowledged that Madison

3

had passed a vehicle on which the belt-driven air injection pump had been disconnected, but they argued that the regulations and the Bureau's guidance were too vague to put Madison on notice that the air injection pump required a belt or that he needed to look for the belt.

The administrative law judge concluded that the statutes, regulations, and Bureau materials put Madison on notice that he had to determine whether the emissions control system on the Blazer was installed consistent with the manufacturer's original configuration. Madison should have recognized that the belt did not attach to the pulley on the air injection pump, which meant that the emissions control system was not installed consistent with the manufacturer's original configuration. The administrative law judge therefore upheld the citations.

Star Smog and Madison filed a petition for writ of administrative mandamus, which the superior court denied.[1]

DISCUSSION

I

*Representation at Administrative Hearing*

Star Smog and Madison contend that the administrative decision is void as a violation of due process because Daniel McGarry, who is a layperson and not an attorney, represented them at the administrative hearing. The contention is without merit as to Star Smog because Star Smog elected to have McGarry provide its representation and that decision did not violate Star Smog's statutory or constitutional rights. And the contention

---

[1] Star Smog and Madison also filed a complaint for declaratory relief. The superior court dismissed the complaint, and Star Smog and Madison make no contention that the dismissal was improper.

4

is without merit as to Madison because he attended the hearing and represented himself.[2] Having notice of the administrative hearing, Star Smog elected to send McGarry rather than hiring an attorney who could attend. The perverseness of the contention presented here is obvious when it is stated as follows: Star Smog is alleging that it violated its own procedural due process rights and now asks us to void the administrative decision because of Star Smog's own choice.

After receiving the citation, Star Smog and Madison each filed a "Request to Appeal Citation." The Attorney General issued a notice of hearing, scheduling the hearing and notifying Star Smog and Madison of some of their rights. Included in the notice of hearing was the following language: "You may be present at the hearing. You have the right to be represented by an attorney at your own expense. You are not entitled to the appointment of an attorney to represent you at public expense. You are entitled to represent yourself without legal counsel. . . ."

At the hearing, McGarry appeared for Star Smog. When the administrative law judge asked McGarry whether "you've decided to represent yourselves," McGarry responded, "Yes. We actually originally hired an attorney, but—about three months prior, but the attorney was unavailable on that date, tried to get a different date. And we couldn't change the date, so rather than get a different attorney, I just decided to take the case myself." McGarry had been the secretary/treasurer of Star Smog. However, during the hearing, McGarry said that he was "no longer the secretary treasurer" of the corporation. In her proposed decision, the administrative law judge wrote that "Daniel

---

[2]     The superior court determined that Star Smog and Madison abandoned this issue because they did not raise it in the petition for writ of administrative mandamus but instead raised it later in the memorandum of points and authorities in support of the petition. Star Smog and Madison assert that the issue of whether a proceeding is void can be raised at any time. We need not resolve this abandonment issue because the contention is without merit in any event.

McGarry, the former Secretary/Treasurer, represented [Star Smog]." At one point during the hearing, McGarry said: "I have been to law school. I have completed two years of law school. I'm not an attorney, but I have some legal training." There was no discussion during the administrative hearing concerning whether McGarry was allowed by law to represent Star Smog at that hearing.

Star Smog did not request a continuance to obtain counsel. (Gov. Code, § 11524 [request for continuance].) Instead, Star Smog sent McGarry, a layperson. On the other hand, Madison appeared at the hearing.

A.      *Star Smog*

Star Smog claims McGarry was practicing law when he represented Star Smog at the administrative hearing and therefore, by analogy to judicial proceedings, the administrative hearing and resulting decision were void. The flaw in this argument is that, even if McGarry were a layperson practicing law in the administrative hearing, the circumstance does not require voiding of the administrative proceedings.

Star Smog relies heavily on *Benninghoff v. Superior Court* (2006) 136 Cal.App.4th 61 (*Benninghoff*), which held that representing a party in an administrative hearing constitutes the practice of law. In that case, a former lawyer who had resigned from the bar represented parties in administrative hearings. The court held that the former lawyer could not do so because the Business and Professions Code prohibited such practice of law by a former lawyer, one who had resigned from the bar. (Bus. & Prof. Code, § 6126, subd. (b).)

*Benninghoff* does not help Star Smog because the question to be answered is whether representation by a layperson rendered the proceedings void, not whether McGarry was technically practicing law when he represented Star Smog. Even if

6

McGarry engaged in the unauthorized practice of law by representing Star Smog at the administrative hearing, such violation does not establish that the proceedings were void.[3]

The conclusion that representing a party in an administrative hearing is the practice of law does not provide a conclusive answer on the issue presented in this case because, in some instances in administrative proceedings, a layperson may practice law. (See, for example, administrative proceedings in which a layperson may represent a party: *Welfare Rights Organization v. Crisan* (1983) 33 Cal.3d 766, 770 [welfare hearings]; *Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 913-914 [Public Utilities Commission hearings]; *Bland v. Reed* (1968) 261 Cal.App.2d 445, 449 [workers' compensation appeals].)  While there appears to be no statute or rule concerning whether a layperson may represent a party in an administrative hearing on a citation from the Bureau, Star Smog provides no persuasive authority or

---

[3]    In any event, the *Benninghoff* holding was limited specifically to the practice of law by a former lawyer who had resigned from the bar, interpreting Business and Professions Code section 6126, subdivision (b).  (*Benninghoff, supra*, 136 Cal.App.4th at p. 69.)

The statute making the unauthorized practice of law a crime does not assist us here because it does not apply if the person is an active member of the bar or is "otherwise authorized pursuant to statute or court rule to practice law."  (Bus. & Prof. Code, § 6126, subd. (a); *Benninghoff, supra,* 136 Cal.App.4th at p. 69.)  This statute does not make it a crime for a layperson to practice law if such practice is authorized by statute or court rule. In other words, this statute allows that there may be circumstances under which a layperson may practice law.

On the issue of whether a layperson can represent a party in an administrative hearing, the *Benninghoff* court noted that the Administrative Procedure Act allows for representation by an attorney or other representative.  Here, McGarry was not a former attorney; instead, he was a layperson.

7

argument for the proposition that allowing a layperson to represent a party in such a hearing is a violation of due process invalidating the proceedings.[4]

In a similar case, the court held that a corporation may be represented by a corporate officer at an administrative hearing on revocation of the corporation's liquor license. (*Caressa Camille, Inc. v. Alcoholic Beverage Control Appeals Bd.* (2002) 99 Cal.App.4th 1094 (*Caressa Camille*).) In that case, the court wrote: "[T]he general common law rule requiring corporations to be represented by counsel in proceedings before courts of record other than small claims courts does not extend to proceedings before administrative agencies and their tribunals." (*Id.* at p. 1103.) The court also noted: "Even were we persuaded to the contrary (and we are not), a decision rendered by an administrative body following a hearing at which a corporation was not represented by counsel would be voidable at the option of the opposing party, rather than void for lack of jurisdiction. [Citation.]" (*Ibid.*) Here, the Bureau has not sought to invalidate the decision.

We recognize that the current case is unlike *Caressa Camille* because the record does not support a finding that McGarry was a current corporate officer, or even a current employee, for that matter, when he represented Star Smog at the administrative hearing.

---

[4] Star Smog cites an apparently unpublished decision of a superior court in Delaware. (*Marshall-Steele v. Nanticoke Mem'l Hosp., Inc.* (Super.Ct. June 18, 1999, C.A. No. 98A-10-001) 1999 Del. Super. LEXIS 137.) In that case, which disagreed with another Delaware Superior Court case, the judge upheld an employee's bid to invalidate an unemployment insurance award in favor of an employer who was represented at the administrative hearing by a layperson. Here, unlike that case, it is the party seeking to void the proceedings who sent a layperson to represent it at the administrative hearing. The unpublished Delaware case is unpersuasive on the issue presented here.

The rule in California prohibiting citation of unpublished cases applies on its face only to unpublished California cases. (See Cal. Rules of Court, rule 8.1115.)

8

Nonetheless, *Caressa Camille* is instructive because it establishes that principles relating to representation in a court of law do not necessarily apply to administrative proceedings.

In a court of law, "an unlicensed person cannot appear . . . for another person, and . . . the resulting judgment is a nullity." (*Russell v. Dopp* (1995) 36 Cal.App.4th 765, 775.) However, "procedural due process in the administrative setting does not always require application of the judicial model." (*Dixon v. Love* (1977) 431 U.S. 105, 115 [52 L.Ed.2d 172, 181-182].) Here, Star Smog gives us no reason to conclude that McGarry's representation at the administrative hearing was a violation of Star Smog's due process rights.

Finally, if McGarry's representation of Star Smog was not authorized, then Star Smog failed to appear at the properly noticed administrative hearing. "If the respondent . . . fails . . . to appear at the hearing, the agency may take action based upon the respondent's express admissions or upon other evidence and affidavits may be used as evidence without any notice to respondent . . . ." (Gov. Code, § 11520, subd. (a).)

B. *Madison*

Madison contends McGarry improperly represented him at the administrative hearing. The contention is without merit because Madison appeared at the hearing and represented himself. The administrative law judge informed Madison of his right to be represented and offered him the opportunity to cross-examine witnesses and provide closing argument. The fact that McGarry included arguments concerning Madison in his statements at the hearing does not mean that McGarry was representing Madison.

## II

### *Standard of Review for Administrative Mandate*

Star Smog contends the superior court used an improper standard of review in evaluating the administrative decision.[5] In its ruling, the court stated that it was using a substantial evidence standard except as to interpretation of statutes and rules, where it used an independent judgment standard. We conclude that the superior court did not apply the wrong standard to the various questions raised in the petition for writ of administrative mandamus. And, in any event, Star Smog fails to demonstrate how this asserted error caused prejudice.

"Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).) However, when reviewing the interpretation of statutes or rules, the court applies a de novo or independent judgment standard. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8.)

Star Smog's contention is without merit as it relates to the standard of review applied by the superior court on the interpretation of statutes and rules. The court stated that it applied the independent judgment standard, which is the correct standard.

Star Smog's contention is also without merit as it relates to matters other than interpretation of statutes and rules. In its decision, the superior court found that the substantial evidence standard of review applied because the agency decision did not

---

**5** Hereafter, except where it is important to be more specific, we refer to Star Smog and Madison collectively as Star Smog.

affect a fundamental right. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 144 [independent judgment standard when agency's decision affects fundamental rights].) That was the correct standard because no fundamental rights are affected by the Bureau's decision.

While Star Smog asserts that the agency decision might result in revocation of its STAR certification by the Bureau, the superior court noted that any revocation of the STAR certification would be the subject of a separate proceeding. This proceeding relates only to the $1,000 penalty imposed by the Bureau. Such penalties do not implicate fundamental rights. (*Handyman Connection of Sacramento, Inc. v. Sands* (2004) 123 Cal.App.4th 867, 880.) By the same reasoning, the requirement that Madison attend eight hours of training does not affect a fundamental right. It is a penalty, to be sure, but not one that takes away his livelihood.

In any event, Star Smog fails to establish that using the wrong standard of review was prejudicial. There is no discussion or argument concerning what would have occurred differently if the superior court had used a different standard of review. We may not reverse a judgment on appeal unless, "after an examination of the entire cause, including the evidence," it appears the error caused a "miscarriage of justice." (Cal. Const., art. VI, § 13.) "To establish prejudice, a party must show 'a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached.' [Citation.]" (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1161.)

III

*Various Contentions*

Star Smog also attempts to pick apart the rulings of the administrative law judge and the superior court, as well as the relevant provisions in the Code of Regulations and the Bureau's BAR Smog Check Manual, to establish that the citations for passing the Blazer cannot be upheld. The attempt, however, fails. Plainly, passing the Blazer, which did not have a properly installed emissions control system, violated Madison's duty to fail it. Nothing in the regulations or Bureau rules justified Madison's failure.

11

In scattergun fashion, Star Smog makes numerous contentions that the citations cannot be upheld. Mentioned among these contentions is the notion that the citations violated due process rights because the regulations and rules did not give adequate notice concerning what was required as part of a visual inspection during a smog inspection. We do not agree that there is any due process violation because the regulations required Madison to verify that the emissions control system was properly installed, which he did not do.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. [Citations.] This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment. [Citation.] It requires the invalidation of laws that are impermissibly vague. A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.' [Citation.] . . . [A] regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved. [Citation.]" (*FCC v. Fox TV Stations, Inc.* (2012) 567 U.S. 239, 253 [183 L.Ed.2d 234, 245-246].)

In the superior court, Star Smog and Madison asserted that Madison followed the requirements for a smog inspection by consulting the underhood emissions control label and the vacuum diagram, and neither of them referred to a belt. They claimed that Madison was required to go beyond those two sources only if the labels were missing or illegible. Star Smog and Madison also asserted that their due process rights were violated to the extent the regulations and the Bureau's procedures required more because those regulations and procedures were vague and overly broad.

The superior court noted that the parties did not dispute the facts as reflected in the administrative law judge's decision.

12

The superior court concluded that the petition for writ of administrative mandamus was without merit. In March 2013, California Code of Regulations, title 16, former section 3340.42, subdivision (e)(1)(A) required as part of a smog inspection: "A visual inspection of the vehicle's emissions control systems. During the visual inspection, the technician shall verify that the following emission control devices, as applicable, are properly installed on the vehicle: [¶] (A) air injection systems. . . ."

The Bureau's BAR Smog Check Manual included requirements for smog inspections in sections 1.3.1 and 1.3.2. Section 1.3.1 requires the smog technician, in making the visual inspection, to use "all available information necessary to determine the vehicle's emission control requirements . . . ."[6] The section provides a nonexclusive list ("including but not limited to") of sources to consult: "underhood emission control label (see section 1.3.2), a current emission control application guide, emission control repair manuals, emission component location guides, manufacturer emission control recalls, vacuum hose routing diagrams, California Air Resources Board (CARB) aftermarket parts listings, the aftermarket part label (see section 1.3.2), and any reliable vehicle manufacturer sources." Section 1.3.1 requires the smog technician to fail the vehicle if

---

[6] Section 1.3.1 of the BAR Smog Check Manual provides, in part: "Inspectors must use all available information necessary to determine the vehicle's emission control requirements, including but not limited to, the underhood emission control label (see section 1.3.2), a current emission control application guide, emission control repair manuals, emission component location guides, manufacturer emission control recalls, vacuum hose routing diagrams, California Air Resources Board (CARB) aftermarket parts listings, the aftermarket part label (see section 1.3.2), and any reliable vehicle manufacturer sources."

Section 1.3.1 also provides, in part: "To pass inspection, the required emission control system(s) must be complete and installed in accordance with the vehicle manufacturer's original California or Federal certified configuration, or, when applicable, in accordance with a CARB aftermarket configuration. If any required emission control systems are found to be tampered or defective, the vehicle shall fail the inspection."

the emissions control system is not "complete and installed in accordance with the vehicle manufacturer's original California or Federal certified configuration" or if "any required emission control systems are found to be tampered or defective."

Section 1.3.2 of the BAR Smog Check Manual states that the "vehicle's underhood emission control label serves as the primary source for emissions control requirements."[7]

Considering the arguments of Star Smog and Madison and the pertinent regulations and procedures, the superior court concluded that Madison "failed to follow the requirements for performing a visual inspection of the subject vehicle." The court continued: "Petitioners attempt to read section 1.3.2 as preempting section 1.3.1, in that they contend a technician only needs to rely on additional sources if the emission control label is missing. This is a misreading of the two sections. The plain language of section 1.3.1 requires technicians to 'use all available information necessary to determine the vehicle's emission control requirements, including but not limited to, the underhood emission control label. . . [.]' Consequently, it is incumbent upon technicians to use all information available, and to make themselves knowledgeable and familiar with the original configurations of the vehicles they are inspecting. Section 1.3.2 does not provide that they may solely rely on the underhood emission control label. It merely provides that the label is the primary source for emissions control requirements, and that an

---

**7** Section 1.3.2 of the BAR Smog Check Manual provides, in part: "Each vehicle's underhood emission control label serves as the primary source for emissions control requirements and to indicate the vehicle's certification type (California, Federal). It is important to review emission control components on this label, since emission control system technology changes and varies between vehicle manufacturers. However, a missing or illegible emission control label does not constitute an inspection failure. In cases where the emission control label is missing or illegible, the inspector may proceed with the inspection provided that the required emission controls can be determined using other sources as described in section 1.3.1."

inspection may proceed in the absence of such a label if the technician is able to rely on other sources of information to determine the required emission controls." (Original underscoring.)

A. *Requirements for Visual Inspection*

Star Smog contends that both the administrative law judge and the superior court misstated the standard for a visual inspection of the emissions control system because both the administrative law judge and the superior court stated that the system had to be "properly connected" and "in good working condition." The contention is without merit because, even if the statutes and rules do not use those terms, they are clearly implied.

Former section 3340.42 of title 16 of the California Code of Regulations, in effect at the time of the conduct leading to the citations, required the smog technician to conduct a "visual inspection" of the "emission control devices" on the vehicle, including the "air injection systems," to ensure they were "properly installed."[8] Also, the Bureau's manual provided, in its "Visual Inspection Procedures": "Pass/Fail Criteria: To pass inspection, the required emission control system(s) must be complete and installed in accordance with the vehicle manufacturer's original California or Federal certified configuration, or, when applicable, in accordance with a CARB aftermarket configuration. If any required emission control systems are found to be tampered or defective, the vehicle shall fail the inspection." (Boldface omitted.) Even though the terms "properly connected" and "in good working" are not in the former regulation or in the BAR Smog Check Manual, those terms are implied to any reasonable reader because they require the equipment, including the air injection system, to be properly installed,

_____

[8] In March 2013, California Code of Regulations, title 16, former section 3340.42, subdivision (e)(1)(A) provided as part of a smog check: "A visual inspection of the vehicle's emissions control systems. During the visual inspection, the technician shall verify that the following emission control devices, as applicable, are properly installed on the vehicle: [¶] (A) air injection systems. . . ."

15

not to be tampered with, and not to be defective. In this case, in particular, the air injection system was not properly installed because the pulley to power the air injection system was not hooked to a belt.

Therefore, neither the administrative law judge nor the superior court applied the wrong standard in determining whether Madison made an adequate visual inspection.

B.      *Specification of Air Injection System as Element to be Checked*

Health and Safety Code section 44012, subdivision (f) requires the following as an element of the technician's inspection of the emissions control system: "A visual or functional check is made of emission control devices specified by the department . . . . The visual or functional check shall be performed in accordance with procedures prescribed by the department."

Star Smog asserts that the statute does not require the technician to check for a belt connected to the air injection system because the BAR Smog Check Manual does not "specify" the belt as one of the emission control devices to be checked. Instead, the regulation specified only the air injection system. Star Smog argues: "This is totally vague." We disagree.

We find it unremarkable that the Bureau's regulation does not specify the belt separately from the air injection system because, on cars that power the air injection system by a belt rather than electrically, the belt is an integral part of the air injection system. No belt; no air injection. It doesn't take a scientist or a Bureau official to figure that out. In other words, the air injection system is incomplete and defective without the belt, which belt is not a separate "emission control device," in the words of Health and Safety Code section 44012, subdivision (f).

C.      *Belt as Component of Air Injection System*

Star Smog argues that the belt cannot be considered part of the air injection system unless the Bureau says that the belt is part of the system. Star Smog couches this as an argument about the "procedure" for determining the components of the air injection

16

system, maintaining that the Bureau was required to give guidance or directives concerning whether a belt is a component of the air injection system because such understanding is outside the knowledge and expertise of the court. To the contrary, we interpret statutes, rules, and regulations reasonably. For example, "[s]tatutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished." (*Home Depot, U.S.A., Inc. v. Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1601.) Here, a reasonable person, and a reasonable technician, would interpret the statutory and regulatory rules discussed above to require a technician to determine through visual inspection whether a belt-powered air injection system had a belt attached.

D.      *Reference Sources*

Star Smog contends that Madison was not required to check for a belt because the referenced sources (including the underhood emission control label, the vacuum diagram, and the manufacturer's factory manual) did not list or show the belt as a component of the air injection system. We disagree.

Section 1.3.2 of the BAR Smog Check Manual provides: "Each vehicle's underhood emission control label serves as the primary source for emissions control requirements." In this case, the underhood emission control label listed the air injection system but did not mention that a belt was a component of that system. Neither did other sources of information about the emissions control system on the Blazer list or picture a belt as a component of the air injection system. A vacuum diagram under the hood did not include a belt, and the manufacturer's factory manual contained a diagram of the air injection system with a pulley for a belt but without a belt depicted.

Star Smog argues that, because these sources did not specifically include mention or depiction of a belt, Madison was under no responsibility to check for a belt. To the contrary, as discussed above, Madison was required to conduct a "visual inspection" of the "emission control devices" on the vehicle, including the "air injection systems," to

17

ensure they were "properly installed." (Cal. Code Regs., tit. 16, former § 3340.42, subd. (e)(1)(A).) It is undisputed that the air injection system could not be properly installed without a belt. In fact, Star Smog concedes that "the belt is required for the operation of the system." Therefore, the absence in the mentioned sources of a listing or depiction of a belt attached to the pulley on the air injection system did not relieve Madison of the responsibility to check for a belt.

E.      *Definitions of Check Failure*

Star Smog appears to contend that Madison was not required to fail the Blazer because none of the reasons for failing a vehicle under the BAR Smog Check Manual applies to a missing belt. To the extent we can understand this contention, we conclude it is without merit.

When a technician performs a smog check on a vehicle and determines that the vehicle fails, the technician must specify one of four reasons: disconnected, missing, modified, or defective. According to Star Smog, this is confusing because the two reasons for failing a vehicle are, according to the BAR Smog Check Manual, that the emissions control system is "found to be tampered or defective." "Tampered" refers to "[a]n emissions control system or component that is missing, modified, or disconnected."

Star Smog appears to claim that the BAR Smog Check Manual and the selection of a reason for failing a vehicle are confusing because the technician must select from terms like "missing, modified, or disconnected," even though the regulation requires the technician to determine whether the system is "properly installed." (Cal. Code Regs., tit. 16, former § 3340.42, subd. (e)(1).)

Star Smog asks: "Imagine if somehow the technician felt that the system was not 'properly installed' as required by statute, but it did not conform to any of the definitions [referring to "missing," "modified," "disconnected," or "defective"] that result in a fail?" But Star Smog vastly overstates any confusion. In our view, the missing belt here would have justified a finding that the emissions control system was modified or disconnected,

18

consistent with the choices offered to Madison. We fail to see how that is so confusing that it would result in Madison passing the Blazer when he should have failed it.

F.  *Differing Regulations and Bureau Requirements*

Building on his claim that the differing language used in the regulations and the BAR Smog Check Manual for failing a vehicle are confusing, Star Smog argues that the differences in the language used is somehow pertinent to whether the citations issued in this case can be upheld. Again, the argument is not clear. In any event, we see no merit.

Focusing on the definition of "disconnected," Star Smog quotes the language of the regulation and the corresponding language in the BAR Smog Check Manual. We too will focus there.

Section 3340.41.5 of title 16 of the California Code of Regulations defines "[d]isconnected" as follows: "A disconnected hose, wire, belt or component is one which is required for the operation of an emissions control system and which has been disconnected."

On the other hand, the BAR Smog Check Manual defines "disconnected" as follows: "Any hose, wire, belt or component, which is required for the operation of the emission control system is present, but has been disconnected."

Star Smog points out that the BAR Smog Check Manual includes the language "is present," while the regulation does not contain that language. Therefore, according to Star Smog, the citations are defective because the belt required to power the air injection system was not present—that is, the belt had been removed and replaced with a smaller belt. Star Smog then asks: "Should the plain meaning of the two words 'is present' be ignored? Undoubtedly, [the Bureau] will argue that the B.A.R. [Smog Check] Manual definition should be ignored and that only the definition in the California Code of Regulations should be considered."

This argument is unconvincing because a belt was present but not connected to the air injection system. Thus, any difference in language between the regulation and the

19

BAR Smog Check Manual has no effect in this case. Also, the air injection system was present but not connected to power. Either way, the difference in the definitions is no threat to validity of the citations in this case.

G. *Retrospective Expansion of the Meaning of Regulations*

Star Smog asserts that an agency cannot retrospectively expand the meaning of a regulation through interpretation. (See *Christopher v. SmithKline Beecham Corp.* (2012) 567 U.S. 142, 158-159 [183 L.Ed.2d 153, 172-173].) However, Star Smog does not explain how that legal assertion applies to this case. We therefore need not consider that assertion. However, we see no way in this case in which the Bureau has expanded the meaning of any regulation in a way prejudicial to Star Smog and Madison.

H. *How the Reasonable Person Understands the Rules and Regulations*

Citing United States Supreme Court precedent, Star Smog contends that clarity in regulation is essential to due process. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. [Citations.]" (*FCC v. Fox TV Stations, Inc., supra*, 567 U.S. at p. 253.)

Star Smog asks: "Did B.A.R provide 'precision and guidance' [citing *FCC v. Fox TV Stations, Inc.*] with their regulation in the subject case? [¶] Would men of common intelligence differ as to the meaning and application?" This part of Star Smog's brief does not provide an answer to these questions.

Simply asking these questions without answering them does not raise an issue we must consider because the appellant bears the burden of establishing error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [appellant bears burden of establishing error].) In any event, the facts of this case are not in Star Smog's favor because Madison improperly passed a vehicle that did not have a properly installed emissions control system. Any reasonable interpretation of the regulations and rules supports that conclusion.

20

I.      *Amendment of BAR Smog Check Manual*

Star Smog notes that an earlier version of the BAR Smog Check Manual updated in 2004 (then called the Smog Check Inspection Manual) expressly required the technician, along with other mandatory steps, to "[e]xamine the air pump for a missing or disconnected belt, check valve(s), diverter/switching valve(s), distribution hoses and vacuum signal line(s)." On the other hand, the version of the BAR Smog Check Manual applicable to this case does not include the mandatory steps for inspecting an air injection system. Instead, it merely directs the technician to visually inspect the air injection system.

Star Smog claims that the "logical interpretation" of this change "is that technicians are no longer required to look for disconnected belts during visual inspections." That interpretation is neither logical nor reasonable. The modification of the BAR Smog Check Manual to remove the steps of a visual inspection of the air injection system cannot reasonably be interpreted to mean that the technician no longer has the responsibility to determine whether the belt on a system requiring a belt for power is disconnected .

## DISPOSITION

The judgment is affirmed. The Bureau is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

                                            _____NICHOLSON_____, J.

We concur:

_____RAYE_____, P. J.

_____DUARTE_____, J.

21